JOSEPH WHITAKER v. LUCIEN HAWLEY, *et al.*

1. LANDLORD AND TENANT; *Quære.* Is the doctrine of the old common law, that upon a covenant to pay rent in a lease of lands and buildings for a term of years, the rent may be recovered notwithstanding the total destruction by accidental fire of the buildings, in force in this state?

2. DESTRUCTION OF DEMISED PERSONALTY, *by Fire; Abatement of Rent.* Even if this common-law doctrine be in force, yet where by a single instrument real and personal property are leased for a gross rental, and the personalty is a substantial part of the leased property, upon a total destruction by accidental fire the lessee is entitled to an abatement of the rent equal to the proportionate rental value of the personalty.

3. INSURANCE, *Effect of.* Where a lease for a term of years in addition to a covenant to pay rent contains a stipulation that the lessee shall insure all or a part of the leased property in a given amount for the benefit of the lessor, *held*, that the provision for insurance limits and qualifies the promise to pay rent, and that as the former becomes operative the latter ceases to have force.

### Error from Leavenworth District Court.

ACTION brought by *Whitaker* against *Hawley* and others, for $275, rent claimed for November, 1880. Trial by the court, at the March Term, 1881, and judgment for the defendants for costs. The plaintiff brings the case to this court. The opinion states the facts.

*Lucien Baker*, for plaintiff in error:

1. Upon a covenant in a lease of land and buildings for a term of years to pay rent, the rent may be recovered after a destruction of the premises leased, by accidental fire. (6 Mass. 63; 16 id. 238; 7 Wall. 416; 72 Pa. St. 285; 39 Cal. 151; 10 Ohio, 412; 4 N. Y. 126; 3 Johns., 44; Taylor's Landlord and Tenant, [7th ed.,] § 375.)

The cases to the same effect, both English and American, are quite fully gathered in the case of *Coogan v. Parker*, 2 South Car. 255, (reported in 16 Am. Rep., pp. 666, 667,) and in that case it is held that no relief can be had either in law or equity.

This was also the law of New York until changed by statute of 1860. (12 Abb. Pr. [N. S.] 449.)

2. It is claimed that because Whitaker insured the leased building for $10,000 for his own benefit, paid the premium himself and collected the insurance money, that in some way it should relieve the defendants from their express covenant to pay rent. The defendants could have insured their interest, and probably did; but such fact cannot relieve them either in law or equity from their express covenant to pay rent. (7 Wall. 423; 72 Pa. St. 285; 1 Sim. 146; 1 El. & El. 474.)

The defendants by their own act created a duty or charge upon themselves, and are bound to make it good notwith-

standing the accidental destruction of the property by fire, because they ought to have provided against it by contract.

Courts cannot add terms and conditions to a contract made by the parties, nor can they refuse to allow damages for a breach thereof, or to render judgment for the rent stipulated, so long as the same is not contrary to public policy; nor can they make contracts for the parties. Loss by fire is an ordinary risk, undoubtedly contemplated by both parties, and by contract they can enlarge or restrict their liability in case of accidental fire; and in such case the rights of the parties must be determined by the contract.

3. It is insisted by the defendants that because machinery, fixtures and personal property were leased with the land and building for a sum in gross, and the property subsequently destroyed by accidental fire, that the plaintiff cannot recover at all, even if the law is as we claim with reference to a lease of land and the buildings thereon; and in support of such proposition they cite some authorities in case of bailment of personal property and the destruction thereof. If such is the law in regard to rental of personal property alone, or the rental of a single room in a building, we fail to see how it can be made applicable in a case of this kind, where lands, buildings, fixtures and machinery and personal property are all rented for one gross sum. That it is not applicable, see 72 Pa. St. 285, and the authorities therein cited; in that case the lot, building, counters, shelving and other personal property were rented for the term of five years at a gross sum per annum, and the same defense was attempted as in this case. Sharswood, Judge, says: "Even in the case of a lease of chattels with a house, where the chattels are all destroyed without fault of the tenant, the better opinion seems to be that it affords no ground of defense *pro tanto*." And such seems to be the law of Indiana, and so decided. (28 Ind. 103.) In this case a saw-mill, with the machinery and other property therein, was rented, as well as a single room in an adjoining factory, for a gross sum. Both buildings, as well as the personal property in the saw-mill, were destroyed by fire,

and the court held that the tenant must pay the rent for the real and personal property, except only the rent for the room in the adjoining factory. And to this same effect we understand is the decision in 14 Ohio, 606. (See also 15 Ohio St. 185; 35 Barb. 295; 21 N. Y. 280; 15 Wend. 74; 6 B. & C. 251.)

Counsel contend that by the destruction of the building and machinery by fire, the consideration of the contract failed, and cite § 8, ch. 21, Comp. Laws of 1879. But this section means that a total or a partial failure of the *consideration at the time* the contract was made may be shown in defense. Besides, the same or similar statutes are in force in nearly all the states, and were at the time the above decisions were made; and where there were no such statutes the courts have generally held that a total or partial failure of the consideration of a contract may be shown as a defense.

*Stillings & Stillings,* for defendants in error:

This case presents three questions: First, does a tenant who rents buildings and machinery for a term of years, to pay rent for the use thereof at stated intervals, bind himself to pay the rent after their accidental destruction by fire, without his fault, to such an extent as to render the use of the same of no value from that time? Second, does a party who hires the use of real and personal property for a term of years for an entire price, become liable to pay for such use after the accidental destruction of the personal property by fire, so as to render the further use of the realty of no value for the term? Third, will a fair construction of the contract sued on in this case so bind the contracting parties as to compel payment after the destruction of the personalty by fire?

By the common law, if personal property is hired or rented for a term, and it perishes by fire or other casualty, there is no liability to pay from that time. (Story on Bailments, § 417; Edwards on Bailments, §§ 375, 409.) If a room or rooms in a building are rented for a term, and the building is destroyed, the rent ceases from that time. (47 N. Y. 62; 26 id. 498;

5 Ohio, 477; 3 Edw. Ch. 316; Taylor's Landlord and Tenant, § 520.)

It is claimed in this case that the rule of the common law was, that in case of renting land, the rents shall continue to be collected, although by accidental fire the building, which constituted the chief consideration for the contract, is destroyed. We concede that this was the general common-law rule, subject perhaps to the exception that when the main inducement to the contract was destroyed, the tenant might demand a cancellation of the contract. (*Coogan v. Parker*, 2 S. C. 225; 16 Am. Rep. 659.) The common law, however, is not in force in Kansas, except so far as it is consistent with the wants of the people, etc., and in aid of our statutes, etc. (11 Kas. 484.) Should it be adopted by this court as claimed by the plaintiff, we would be in the unenviable condition of having adopted rules from the common law by which if A. rent of B. the use of a livery stable for ten years, at a thousand dollars a year, and the livery stock for the same time and price, and both are accidentally destroyed by fire, B. will be excused from paying for the use of the stock and compelled to pay for the use of the stable for the ten years. The rule would be an absurd one. The common-law rule on the subject is contrary to right and natural justice, and is so regarded by the best writers on the subject. (4 Paige's Ch. 355.) It is contrary to the law of every other civilized nation. By the civil law, which is now the law of this state as a part of the territory of Louisiana, unless our statutes have in some way changed it, the tenant in such case as this is excused from payment of rent. Our courts as well as those of other states have not hesitated to disregard the common law when its rules work injustice when applied to the condition and wants of the people. (21 Kas. 99; 13 Ohio St. 29.)

The consideration for the premises under the rules and decisions of courts, as well as by the stipulations of the lease, is the use and enjoyment of the premises by Dever and his associates. This lease of the real and personal property, being for two years, was required by statute to be in writing. The

consideration for the premises wholly failed from the time of the fire.   Our statute provides, § 8, ch. 21, Comp. Laws 1879, that "the want or failure in whole or in part of the consideration of a written contract may be shown as a defense," etc. This was an executory contract.   The consideration was a continuing one.   If this statute is not made for just such cases when it uses the words "want" and "failure," the first of these words properly applying to the time of making the contract, and the second to anything which shall occur during its execution, it is difficult to conceive what the statute was made for.

This case presents the absurdity of adopting the common-law rule in this state, as claimed by the plaintiff.   The legislature has provided for an insurance department, and made ample provisions for encouraging insurance.   Almost every house in towns and cities, if not in the country, is insured as this was.   When the house is destroyed, the owner puts the money in his pocket, and can rebuild or build elsewhere, or loan his money at interest.   The reasoning of some of the courts in establishing this harsh rule, that if a tenant should be relieved from the payment of rent in case of destruction of his property, it would be a temptation to the tenant, in some cases, to get rid of a hard bargain by burning the property, is reversed in this state, for if the landlord can still receive the rents and have the property converted into money by a fire, the temptation of landlords would be too great.

The proposition that recovery cannot be had for personal property after its destruction, will not be controverted.   A part of the property, for the use of which $275 per month was to be paid, was personal property.   In a proper case, a court of equity would perhaps make an apportionment, but it would not do so to enforce an inequitable demand such as this is.   The plaintiff therefore cannot, even if this court would follow the common-law decisions, recover the $275.   By this contract he has mingled the two, and cannot sever them; and being unable to recover one, cannot recover the other. (14 Ohio, 606.)

But in any view of this case on a fair construction of this

contract, no recovery can be had. The court will construe the contract according to the intention of the parties. It cannot be pretended that when Whitaker insured the building, and bound the lessee to insure the personalty, thereby providing for the value of it in money, in case of fire, that it was intended or contemplated that plaintiff in error should have the value of the property in money, and still draw rent for it. (47 N. Y. 62; 13 Pet. 89, 100, 101.)

The plaintiff was bound to receive back the property and cancel the contract. (*Coogan v. Parker*, supra.)

The opinion of the court was delivered by

BREWER, J.: This was an action on a lease, in which the defense was the destruction of the property leased, by fire. Judgment was entered in the district court in favor of the defendants, and the plaintiff alleges error. The lease was in writing, and was as follows:

"It is hereby agreed between Joseph Whitaker, of the county of Leavenworth and state of Kansas, of the first part, and John W. Dever, general superintendent of the Leavenworth syrup and sugar refinery, of the county of New York and state of New York, party of the second part, as follows: The said Joseph Whitaker, in consideration of the rents and covenants hereinafter specified, does hereby let and lease to said J. W. Dever and his associates, the beef and pork packing house, No. 1411, South Second street, situated upon a portion of block No. six (6), in Fackler's addition to Leavenworth city, Kansas, with all engines, boilers, machinery, scales and fixtures in said building, consisting of engines, boilers, pumps, elevator machinery and steam tanks, and also a railroad switch with scales attached to weigh railroad cars, and one wagon scales, appertaining to said leased premises, a schedule of said machinery to be prepared in duplicate on the first day of December, 1879, with the ground upon which the building is situated, and a strip of one hundred feet immediately south of said building at a right angle with Second street, and a strip north of said main building seventy-five feet wide at a right angle with said Second street, said ground being parts of blocks six and seven (6 and 7), in Fackler's addition to Leavenworth city, Kansas, together with the use of the

reservoir pipe and apparatus for supplying water on lots one (1) and two (2), in block No. nine (9), in said Fackler's addition to said Leavenworth city, for the term of two (2) years from and after the first day of December, 1879, on the terms and conditions hereinafter mentioned, and the payment of the sum of two hundred and seventy-five dollars ($275) per month as rent for the use of the premises and property above described: *provided*, that in case any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said Joseph Whitaker, his agent or attorney, to reënter said leased premises and to remove any and all persons therefrom.

"And the said John W. Dever does hereby hire, for the term of two years from the first day of December, 1879, and does hereby covenant and promise to pay to said Joseph Whitaker as rent for the premises and property the sum of two hundred and seventy-five dollars per month and during the continuance of this lease, beginning December 1st, 1879. And said party of the second part agrees to keep all the machinery and attachments thereto insured at its insurable value, in some responsible company, for the benefit of said Joseph Whitaker during said term of two years, and also to pay all taxes upon all the machinery and fixtures placed by the second party in said premises. And the party of the second part also agrees that he will at his own expense, during the continuance of this lease, keep the said premises and other property in every part thereof in good repair and working order, and will not release the whole of said property without the written consent of said Whitaker, but may associate other persons with him, and at the expiration of the term yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damages by the elements excepted. And the said party of the first part does covenant that the said party of the second part and his associates, on paying the rent as agreed and performing all the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the premises and property for the term aforesaid. The party of the first part further agrees that the party of the second part, during the pendency of this lease, shall have the privilege of purchasing said property, in preference to any other party at the same price, the premises, machinery and fixtures herein mentioned; and should the said party of the first part desire to release the same at the expiration of this lease, the party

of the second part is to have the refusal, if he shall pay as much as any other party.

"Witness our hands and seals, the 18th day of October, 1879.
(Signed)        J. W. WHITAKER. (Seal.)
                J. W. DEVER,       (Seal.)
    *Gen. Supt. Leavenworth Sugar and Syrup Refinery.*
Executed in presence of—
    H. WILLIAMS,
    W. GREEN."

The trial was by the court without a jury, and the following findings of fact were made. Upon them, with the lease, all the questions in the case arise:

"*First.* The plaintiff, by the lease sued on, rented the property therein mentioned, partly personal and partly real, to John W. Dever and his associates for two years from December 1st, 1879, to be used as a manufactory for glucose, syrups and sugar from corn, the rent to be $275 per month, payable monthly.

"*Second.* Soon after the execution of said lease, and on the — day of December, 1879, the said Dever associated with himself Lucien Hawley, Nicholas A. Jones, J. Martin Jones, C. V. N. Kittridge, Merritt H. Insley and Matthew Ryan, as partners in the business to be carried on, on said leased premises, and did conduct and carry on such business upon said premises for some time, and the said associates were carrying on such business upon said premises at the time of the fire hereinafter mentioned.

"*Third.* That down to and including the month of October, 1880, the plaintiff demanded of the said firm and collected the rents as specified in the above-mentioned lease, and the firm paid the same in accordance with the stipulation in said lease.

"*Fourth.* That before the fire hereinafter mentioned, but at what date the proof does not disclose, the said Lucien Hawley, on behalf of himself and associates except Dever, asked of the plaintiff his written consent to the assignment of said lease by Dever to the firm aforesaid, which was refused, the plaintiff assigning as a reason for such refusal that an assignment was unnecessary, inasmuch as the lease ran not only to Dever, but to his associates as well.

"*Fifth.* On the night of October 28th, 1880, the buildings embraced in the lease were wholly destroyed by fire. At the

same time all the personal property and other property mentioned in said lease was by the same fire destroyed or greatly injured, except two boilers and the land mentioned in the lease. The fire was accidental, and without fault of the defendants or either of them.

"*Sixth.* That the fire left the premises and property mentioned in the lease in a condition in which the use of the same for the business for which it was rented was of no value, without an expenditure thereon greatly in excess of the value of the use of said premises for the remainder of the lease; but that the land and such personal property as was not wholly destroyed might have been of some use and value for other purposes, but was of no value to the lessees except in connection with the buildings and other property as they were before the fire.

"*Seventh.* That about November 1, 1880, the defendants notified the plaintiff that they would no longer occupy or use said premises or property, and have not since that time occupied or used the same, and the plaintiff refused to receive the said premises, and has not received the same.

"*Eighth.* That about December 1, 1880, the plaintiff demanded of the defendants payment in accordance with the stipulation of said lease for rent for the month of November, 1880, which was by the defendants refused because of the condition in which the fire left the premises.

"*Ninth.* On the 26th day of July, 1880, said Lucien Hawley, Nicholas A. Jones, J. Martin Jones, C. V. N. Kittridge, Merritt H. Insley and Matthew Ryan brought in this court against John W. Dever, suit No. 7980, in which suit judgment was rendered against said Dever, as appears in journal 21 of this court, on pages 97 and 98, here referred to as part of this finding."

Conclusion of law:

"The defendants are entitled to a judgment for costs."

The general doctrine of the common law unquestionably was, that upon a covenant in a lease of lands and buildings for a term of years to pay rent, the rent could be recovered after a destruction of the buildings leased, by accidental fire. The express contract and promise was not discharged by an act for which the lessor was not responsible. See among many the following authorities: *Fowler v. Bott*, 6 Mass. 63; *Sheets v. Sheldon*, 7 Wall. 416; *Bussman v. Ganster*, 72 Pa.

St. 285; *Cowell v. Lumley*, 39 Cal. 151; *Phillips v. Stevens*, 16 Mass. 238; *Linn v. Ross*, 10 Ohio, 412; *Moffatt v. Smith*, 4 N. Y. 126; *Hallett v. Wylie*, 3 Johns. 44; Taylor's Landlord and Tenant, (7th ed.,) § 375. This doctrine is challenged by counsel for defendants, and it is urged that it has no foundation in natural justice; that the reasons for its existence have disappeared with the changed conditions of society; and that it ought not to be recognized as the law of leases in Kansas.

It is further claimed that even if this general rule be recognized as in force in this state, until modified by the legislature as was done in the state of New York, it is not controlling in this case, because here was a lease of both real and personal property and at a single gross sum; that at common law a lease of the latter ceased upon its accidental destruction by fire; and that as plaintiff failed to show anything by which an apportionment of the rental value of the two kinds of property can be made, he must fail in his action.

And finally, it is insisted that the parties to this lease have made provision for the contingency of fire, and that upon a fair interpretation of the contract as a whole, it is evident that the understanding and intent were that upon a destruction by fire rent should cease, and in insurance should the landlord receive compensation.

These are the questions for our consideration.

With regard to the first question, there can be little doubt that if it were presented as a new question to the courts, the general rulings would be against the common-law doctrine. For while the argument in support of it is brief and clear, yet the practical application of the doctrine works injustice. It assumes that which is not generally true, and ignores that which is ordinarily the underlying fact. A man leases, and contracts to pay rent. He puts no limitations or conditions in his contract. Therefore the courts should insert none, and should hold him to the very letter. He knew of the possibility of destruction by fire, and if he purposed to pay only until such destruction, he should have inserted a stipulation accordingly.

Omitting any such stipulation he intended no such limitation, but meant himself to assume the risk, and contracted for rent during the entire term. Now this argument is clear and strong, and, if we abide by the letter of the contract, unanswerable. But this assumes, what is not generally true, that the matter of fire enters into the thought of the parties. In nine cases out of ten the possibility of fire is not contemplated. A party sees a store suitable for his business or a house pleasant for a home, and if time and terms are satisfactory, he leases. Often no written contract is signed. And when a written lease is prepared he looks simply to the amount of rent and the length of the term named. He may indeed examine it to see that nothing objectionable is inserted, but he seldom notices the omission of a stipulation for which there is apparently no present need. Destruction by fire is an unthought-of contingency. The fact is, the parties negotiate for the possession of the building during the entire term. This underlies the whole thought of lease, just as fully as when they negotiate for the hiring of a horse, or a steamboat, or any other chattel. If fire is thought of, it will be mentioned, and if it is not mentioned, it is because it is not thought of, and because they are negotiating for a mutually understood coterminous occupation and rent. Now to ignore these facts, which actually underlie the contract and are the very basis upon which it is made, will practically work out injustice, no matter how beautiful and symmetrical the legal structure we erect thereon. The case of *Bradley v. The Steam Packet Co.*, 13 Pet. 89, illustrates this truth. The plaintiff in error hired a boat of defendant in error by this written contract: "I agree to hire the steamboat Franklin, until the Sidney is placed on the route, to commence to-morrow, 20th inst., at $35 per day." Now this makes no exception of the times when by reason of the ice the boat could not run, nor of the contingency that some accident might happen to the Sidney, and she might never be placed on the route. Upon its face it is a clear and absolute promise to pay up to the happening of a certain specified event, as clear and absolute and no more so than a prom-

ise to pay rent for two years. But the supreme court of the United States held that he might show, that to the knowledge of defendant he was the carrier of the mail over a certain route; that when the river was not closed by ice he ran a steamboat carrying both the mail and passengers; that the Sidney was designed and was being prepared for this service, and that the Franklin was wanted for the same purpose; and also that when the river was obstructed with ice, as it was every winter, he carried the passengers and mail by land and had an establishment of horses and stages therefor: so that the contract, instead of being, as it reads, one for continued service, was, in view of the underlying facts, one for service when service was possible. See also *Doe, ex dem. Freeland, v. Burt*, 1 T. R. 701, in which Ashurst, J., said that "the construction of all deeds must be made with reference to the subject-matter, and it may be necessary to put a different construction on leases made in populous cities from that on those made in the country." The case itself illustrates the thought.

Again, in almost every other contract these underlying facts are recognized, and modify the letter to accomplish the intent. Thus in the hiring of chattels, though the terms be as absolute and positive as those of a real-estate lease, their absolute destruction without the fault of the hirer terminates the contract. It is assumed that the contract only lasts and the obligation to pay for the use continues only while the property remains in being, and not until the end of the term named in the contract. Anything which involves the substantial destruction of the chattel puts an end to the obligations of either party in reference to it. (Story on Bailments, § 417; Edwards on Bailments, §§ 375, 409; *Dexter v. Norton*, 47 N. Y. 62.) So if the hiring is of a room or rooms in a building, destruction of the building by fire puts an end to the lease. (*Vinton v. Cornish*, 5 Ohio, 447; *Graves v. Berdan*, 26 N. Y. 498; *Stockwell v. Hunter*, 11 Metc. 448; *Womack v. McQuarry*, 28 Ind. 103; *McMillan v. Solomon*, 42 Ala. 356.) Though perhaps a different rule may be considered in force in England. (*Izon v. Gorton*, 5 Bing. [N. C.] 501.) In the

case of *Taylor v. Caldwell*, 113 E. C. L. R. 824, it appeared that A. agreed with B. to give him the use of a music hall upon certain specified days for concerts. Before the time arrived the hall was burned, and both parties were held discharged. Blackburn, J., speaking for the court, says: "The principle seems to us to be, that in contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance." And the reason he gives is, "because from the nature of the contract it is apparent that the parties contracted on the basis of the continued existence of the particular person or thing." The distinction of course is made that in case of chattels there is a total destruction, while in the case of ground and buildings it is only partial; the ground remains. But if the principle is sound, the application is easy and the rent may be reduced *pro tanto*. Our statute provides explicitly for the defense of a partial failure of consideration. (Comp. Laws 1879, p. 209, § 8.) And right here it may be remarked that a lease is in one sense a running rather than a completed contract. It is an agreement for a continuous interchange of values between landlord and tenant, rather than a purchase single and completed of a term or estate in lands. In case of the purchase of a horse or other chattel, if the latter ceases to exist after purchase, there is no failure of consideration, partial or total, for the whole consideration passed at the moment of sale; but the whole consideration of a lease does not pass till the term is ended. And this statute has further point, when we compare the rule concerning the covenant for quiet enjoyment and the promise to pay rent. The former it was held was not broken unless the loss of possession to the tenant arose from an eviction, although it was a distinct promise that the tenant should have possession, and of course that meant possession of all included in the lease; yet destruction by fire of the building was no breach. The fire was no act of the landlord; he had been guilty of no breach of his covenant. As a rule respecting real

estate this may have been in accord with the technicalities of the common law, but as a personal contract it is certainly broken when the larger part, it may be, in value of the property leased has ceased to exist. And the clear tendency of the rulings has been to do away with the common-law technicalities concerning real estate, and to bring the rules of the common law more in harmony with those respecting personal property. Doubtless there has been a great change in the relative value of real estate, meaning thereby merely the ground itself and personalty, including in this the buildings and improvements put upon the ground. Indeed the value of the former depends largely on the amount and value of the latter. The feudal system shaped and modified the common law concerning real estate. Land could not be taken on execution. Alienation was difficult and expensive. The landlord was but the successor of the ancient feudal lord, and his rights were correspondingly sacred; but now, the holder of real estate has little or no vantage over the owner of personal property. The distinctions growing out of the feudal system are disappearing, and this distinction between the lease of real property and the hiring of chattels is one which sooner or later will cease to exist. Insurance, now so common, works a change in the relative position of the parties. Formerly the landlord was to a great extent at the mercy of the tenant, who might put an end to his liability by firing the building, and being in possession could do it easily and without probability of detection. The burden of such a loss would fall upon him who had so little means of prevention or detection; hence one source of protection was to continue the liability for rent. But to-day the rule is insurance. By this, fire only changes the character of the owner's property from buildings to money—often a welcome change. And if the landlord gets the value in money, which he may put at interest, he certainly ought not to receive rent for that which has ceased to exist, and thus double his profits, and especially when the insurance premiums are paid by the tenants. In this case it appeared that the landlord had $10,000 insur-

ance on the building, which he has received. In other words, that amount he may put at interest, while demanding rent for the use of property no longer existing whose price that is.

Further, it may be remarked that even at common law it was held that if the interest of the lessee in a part of the demised premises was destroyed by the act of God or the public enemy, so as to be incapable of any beneficial enjoyment, the rent should be apportioned. Thus it is said in Rolle's Abr. 236, that if the sea break in and overflow a part of demised premises, the rent should be apportioned. See also *Bayley v. Lawrence*, 1 Bay, 499; *Ripley v. Wightman*, 4 McCord, 447; *Coogan v. Parker*, 2 South Car. (N. S.) 255 — a case in which is a full and satisfactory review of the authorities upon this question; *Edwards v. Etherington*, 24 Eng. C. L. 437; *Cowie v. Goodwin*, 9 Car. & P. 378. Without pursuing this discussion further, we close with a reference to the opinion of Chancellor Walworth, in the case of *Gates v. Green*, 4 Paige, 354, in which he says: "It appears to be a principle of natural law, that a tenant who rents a house or other tenement for a short period, and with a view to no other benefit except that which may be derived from its actual use, should not be compelled to pay rent any longer than the tenement is capable of being used." He refers to the civil law, the law of Scotland and elsewhere, to show that such is the accepted rule outside the domain of the common law, and evidently regards the rule of the latter as against the general law, and also against natural justice. If the case before us rested upon the single question, whether the rule of the common law is a part of the law of this state, we should be slow to disturb the decision of the district court. True, the common law is in force in this state, but only as made so by statute, and only then "as modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people." (Comp. Laws 1879, p. 1013, § 3.)

But passing to the second question, and we think the law is, that where real and personal property are leased by a single instrument, for an amount in gross, and the personalty is a

44—25 KAS.

substantial part of the property leased, its destruction without the fault of the lessee, by fire or otherwise, entitles the latter to an apportionment of the rent. The authorities are not uniform upon this question. In the case of *Bussman v. Ganster*, 72 Pa. St. 285, a lot and building with counters, shelving and other fixtures were leased for a sum in gross. The building and fixtures having been destroyed by fire, an apportionment of the rent was sought, but denied. Sharswood, J., speaking for a majority of the court, said: "In the case of a lease of chattels with a house, where the chattels are all destroyed, without fault of the tenant, the better opinion seems to be that it 'affords no ground of defense *pro tanto*.'" But the authorities cited do not bear him out in this opinion. Among others, he cites *Taverner's Case*, 1 Dyer, 56, but that supports the right of apportionment as follows:

TRINITY TERM, 35 Hen. 8; *Richards Le Taverner's Case*, 1 Dyer, 15.—A man makes a lease for years, of land and of a stock of sheep, rendering certain rent, and all the sheep died. It was asked upon the indenture of *Richards Le Taverner* whether this rent might be apportioned? And some were of opinion that it should not, although it is the act of God, and no default in the lessee or lessor; as if the sea gain upon part of the land leased, or part is burned with wild fire, which is the act of God, the rent is not apportionable, but the entire rent shall issue out of the remainder. Otherwise is it if part be recovered or evicted by an elder title—then it is apportionable. And of this opinion were Bromeley, Portman, Hales, *Sergeants;* Luke, *Justice;* Brooke, and several of the *Temple*. But Marvyne, Brown, *Justices;* Townshend, Griffith, and Foster, *e contra;* but all thought it was good equity and reason to apportion the rent. And afterwards this case was argued in the readings by More, in the following *Lent*, and it seemed to him, and to Brooke, Hadley, Fortescue, and Brown, *Justices*, that the rent should be apportioned, because there is no default in the lessee.

See also, *Womack v. McQuarry*, 28 Ind. 103.

Indeed, there would seem to be no just ground for denying apportionment, even though the common-law doctrine in respect to leases of real estate be conceded. Mingling real and personal property in a single lease ought not to prevent

the accepted rules concerning the hiring of each to be applied, whenever application is possible. So that if plaintiff ought to recover for the rent of the building, the rental named in the lease should be reduced by the proportionate value of the rental of the machinery and other personal property.

With reference to the last proposition, it will be borne in mind that the obligation to pay rent after the destruction by fire was always rested upon the part of the contract therefor. It was never doubted but that by contract this obligation might be limited or removed. The parties might stipulate for rebuilding by either, for the absolute termination of the lease, or any other change in their respective obligations and rights. Here the contingency of fire was foreseen and provision made therefor. And whether that provision was ample or not, is no more a matter of present inquiry than whether the rental stipulated for was excessive or insufficient. The contract was, that the tenant should keep the personal property insured at its insurable value in some responsible company for the benefit of the landlord. Thus in case of fire the landlord would receive pay for his property destroyed. Rent is compensation for the use, and implies the continued existence of the property to be used. Here this compensation was named in the fore part of the lease as "$275 per month as rent for the use of the premises and property above described." Beyond this compensation was the stipulation for insurance. By the lease, then, as a whole, the tenant was to pay rent for the use of the property; and in addition, purchase a guaranty to the landlord that in case such use should fail by reason of fire, he should receive the value of the property destroyed. When the latter comes into force, is it not plain that the former ceases? Was not the one intended as a substitute for the other? Suppose, instead of contracting to procure insurance, the tenant had contracted to himself insure the property, so that in case of destruction by fire he was bound to pay the value: would it for a moment be doubted that the rent ceased when the obligation to pay the value arose? Apply such a contract to the case at bar: could it be held that a party con-

tracted that, in case of destruction by fire the day after he had taken possession, he would pay to the landlord the value of the property leased, and also pay $275 a month rent for its use for the ensuing two years? Before a contract could be so interpreted, it must appear, not merely that the language will justify such an interpretation, but also that it necessarily excludes every other construction. Paying value is equivalent to purchase, and who would think if the right to purchase at a stipulated sum was inserted in the lease, that rent could be enforced after such purchase? If the contract to pay value to insure is so manifestly inconsistent with the obligation to pay rent that the latter gives way when the former becomes operative, the same principle applies when the contract is to furnish insurance. While the contrast is not so glaring, it is still obvious that the insurance is to take the place of the rent. The insurance is a provision to compensate the landlord when the rent fails, and not a provision to double the rent.

Counsel refers us to cases in which it was held that the fact that the landlord had collected insurance on the building did not affect the tenant's liability on his contract to pay rent; but that is not the question here. It is not what either party may do voluntarily and for his own benefit without affecting the contract liability of the other, but how far does one stipulation in a contract modify and limit another? It might be conceded that the landlord could place any insurance on his property, and in case of fire collect it even to the full value of the building, or that the tenant could voluntarily place a like insurance for his own or his landlord's benefit, and that such separate, voluntary act of either in no manner affected the contract obligations of either to the other, and still such concession would throw no light on the question as to the scope and intent of a single contract which couples an express promise to pay rent with an equally express promise to insure or to furnish insurance. Force can be given, it is true, to each promise to the full extent; the tenant can pay rent to the end of the term whether the building burn or not, and he can furnish the insurance, and

if the building burn the landlord may receive the value, and so each promise in the letter can be complied with. But the question is, did the parties by this contract intend any such result? Did they contemplate this double burden on the one party and double blessing to the other? We think not, but rather that in harmony with justice and equity they intended that rent should be paid while use was possible, and that when use failed through fire the landlord should receive the value in insurance in lieu of rent.

But it is said that the insurance contracted for was simply on the personalty; that such insurance, even if it abates the rent, abates it only on the personalty, and that if defendants wish any abatement they must show the relative rental values of the real and personal property. This is a misconception. The rent was in gross for the real and the personal property. The contract concerning insurance was a single provision; it shows that the parties contemplated the possibility of fire, and made their stipulations accordingly; and whether that provision was for insurance in a definite amount on all the property, or the full value of either the real or the personal, is immaterial; it is the contract provision for the possibility of fire. Doubtless the landlord was willing to pay for the insurance on the building, if in addition to rent for the use of his property he could also obtain payment of the insurance on the machinery, etc.

The case of *Bricker v. Bricker*, 11 Ohio St. 240, illustrates this proposition. In that case, which was an action on the covenants in a deed, the deed contained a covenant of general warranty and one against incumbrances. This latter was a special one, and excluded the incumbrance, which was afterward enforced against the land. This exclusion was not direct and by naming the excluded incumbrance, but by implication and from naming a certain class of incumbrances against which the grantor covenanted. Yet the court held that the covenant of general warranty, which alone would have covered this incumbrance, was limited by the covenant against incumbrances, and as that excluded this particular incumbrance, it

was outside both the covenants. Several authorities are cited in the opinion in which general covenants and promises have been limited and qualified by special ones in the same instrument, and this without any express declaration of limitation. The mere presence of the special promise is adjudged a declaration of the limitation. So in this case, the general contract to pay rent is limited by the special provision concerning insurance.

Again, it is to be noticed that this lease is specially of the building and machinery. Its language is not that a certain tract of ground with the buildings thereon is leased, but that a certain building and some named personal property are leased, together with the ground upon which they are situated. This shows that the thought of the parties was on the hiring of that property which was liable to destruction, and not to the mere place upon which it rested : a very different thought from that which underlies the hiring of a farm, where the use of the ground as such is the matter of consideration.

But it may be said that this gives undue force to the insurance clause, because the property might be only partially destroyed by fire: and what then ? May the lessee throw up the entire lease, or is it binding upon him, subject to an abatement of the rent? It will be time enough to decide that question when it arises. For the present, all we decide is, that the interpolation of such a stipulation concerning insurance does away with the strict rule of the common law, even if it has any force in this state, and that where there is a total destruction by fire, and the entire beneficial use is lost to the lessee, he may rescind the lease and be relieved from his promise to pay rent. Of course, other considerations may apply where the soil itself has a beneficial use, or there is only a partial destruction. Those cases will be considered when they arise.

Upon the record as it stands before us, we think the decision of the district court is correct, and it must be affirmed.

All the Justices concurring.