No. 23,808.

## J. W. SAYLOR, *Appellant*, v. J. E. BROOKS and H. STRASBURGER, *Appellees*.

### SYLLABUS BY THE COURT.

LEASE—*Landlord to Keep Premises in "Good Repair"—Premises Destroyed by Fire—Landlord Not Obligated to Rebuild.* An agreement in a lease covering the basement and first story of a two-story building that the landlord is to keep it in good repair does not obligate him to restore it in case of its destruction by fire without his fault.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed November 10, 1923. Affirmed.

*E. L. Burton*, and *Paul H. MacCaskill*, both of Parsons, for the appellant.

*W. S. Hyatt, Carl V. Rice*, and *W. D. Atkinson*, all of Parsons, for the appellees.

The opinion of the court was delivered by

MASON, J.: J. E. Brooks owned a two-story concrete building. He leased the first floor and basement for a period expiring March 1, 1923, to J. W. Saylor. The building was destroyed by fire December 28, 1918. The lease contained an agreement on the part of the landlord that the building was to be "kept in good repair." After the fire Saylor demanded that Brooks rebuild it, and upon his refusal brought this action to recover damages. H. Strasburger was joined as a defendant because of his having bought the lot on which the building had stood. Judgment was rendered in favor of the defendants and the plaintiff appeals.

The question presented is whether an agreement to keep in repair made by the landlord in a lease covering a part of a building requires him to restore it where, without his fault, it is entirely destroyed by fire. The law with respect to the liability of the lessee under a similar agreement on his part has been thus stated:

"According to the common-law rule, which has been followed generally in this country, a covenant on the part of the lessee to repair or keep in good repair imposes on him an obligation to rebuild the demised premises if they are destroyed during the term by fire or other casualty, even where he is without fault. . . . Now, however, in some jurisdictions, by statutory enactment or judicial construction, no covenant or promise by a lessee to keep and leave the demised premises in good repair will require him to

rebuild if the premises are destroyed, by fire or other casualty, without fault or negligence on his part, unless the language of the lease shows plainly that it was the intention of the parties that he should be so bound." (24 Cyc. 1089, 1090.)

In a number of the American cases cited in support of the first sentence of the text quoted the agreement to repair involved was that of the lessor instead of the lessee (*Reno v. Mendenhall,* 58 Ill. App. 87; *Cordes v. Miller,* 39 Mich. 581, which moreover is not a "repair" case; *Allen v. Culver,* 3 Den. [N. Y.] 284; *Electric Railway v. Electric Light Co.,* 200 Pa. St. 372), and generally the agreement to repair is given the same interpretation by whichever party made. Upon the strength of two Massachusetts cases (*Flynn v. Trask,* 11 Allen, 550; *Leavitt v. Fletcher,* 10 Allen, 119) it is said in another textbook: "When a landlord expressly covenants to repair . . . his obligation extends to the rebuilding of the premises in case of their destruction by fire." (1 Taylor's Landlord and Tenant, § 330.) Another contains this statement, the cases in support of which, whoever, are affected by other considerations, such as more specific expressions in the lease: "Where a landlord's covenant to make repairs is general and unqualified it' has usually been held to impose on him the duty to rebuild the premises." (16 R. C. L. 1051.)

The theory upon which an agreement to repair, or to keep in repair, is held to include an obligation to replace in the event the property leased is destroyed, is like that under which the lessee's agreement to pay rent is held to bind him for such payment even after the destruction of a building, the reasoning being that if an exception on that account had been intended the lease would have said so. The common-law rule holding the tenant to the payment of rent after that which makes the contract of value to him has ceased to exist is criticised in an often-cited opinion written by Mr. Justice Brewer, in a case which was decided upon another phase. (*Whitaker v. Hawley,* 25 Kan. 674.) That rule, while generally followed, has been repudiated in a case in which the matter is extensively discussed holding definitely that a tenant who covenants to keep the leased premises in repair is not required to restore a building destroyed without his fault. In the opinion it was said:

"What did the parties to this contract understand and intend by the terms 'repair' and 'keep in repair'? These words, 'repair' and 'keep in repair,' are not technical words, nor should they be given a technical or strained interpretation. They should receive their ordinary interpretation. To repair, as it is ordinarily used, means to amend, not to make a new thing, but to refit, to make good

Saylor v. Brooks.

or restore an existing thing [citing case]. When we speak of repairing a thing, the very expression presupposes something in existence to be repaired. If a carpenter contracts to repair a house, or a mason a chimney, the ordinary construction of these contracts would not be that these parties had agreed to build a new house or a new chimney." (*Wattles v. Ice and Coal Co.,* 51 Neb. 251, 260.)

The general rule holding the tenant liable for rent after a building has been burned is limited to leases covering something more than the property destroyed. (16 R. C. L. 956-8.)

"In the case . . . of a lease of a building alone, without the land, or of merely certain rooms in or parts of a building, if the building, or the part thereof which is the subject of the lease, is destroyed, it has been generally held in this country that nothing remains from which the rent can issue, and that consequently the liability therefor immediately ceases." (1 Tiffany's Landlord and Tenant, § 182, p. 1196.)

"To the rule maintained by many of the authorities, that where the lessee takes an interest under his lease in the soil upon which the leased building stands, he is still liable for the rent for the term, even though the building is destroyed by fire or other inevitable accident, unless he protects himself by stipulation, there is a well-defined exception, upon which the authorities are uniform, and it is this, that when one leases an upper story or the basement only of a building, or a room, or apartments therein, and the building is destroyed by fire or other unavoidable casualty, he is thereby relieved from the further payment of rent." (Note, 61 A. S. R. 571.)

This language from the opinion of Mr. Justice Brewer already referred to is pertinent here:

"The fact is, the parties negotiate for the possession of the building during the entire term. This underlies the whole thought of lease, just as fully as when they negotiate for the hiring of a horse or a steam-boat, or any other chattel. If fire is thought of, it will be mentioned; and, if it is not mentioned, it is because it is not thought of, and because they are negotiating for a mutually understood coterminous occupation and rent. Now, to ignore these facts, which actually underlie the contract, and are the very basis upon which it is made, will practically work out injustice, no matter how beautiful and symmetrical the legal structure we erect thereon. . . . Again, in almost every other contract these underlying facts are recognized, and modify the letter to accomplish the intent. Thus in the hiring of chattels, though the terms be as absolute and positive as those of a real estate lease, their absolute destruction without the fault of the hirer terminates the contract. It is assumed that the contract only lasts, and the obligation to pay for the use continues only, while the property remains in being, and not until the end of the term named in the contract. Anything which involves the substantial destruction of the chattel puts an end to the obligations of either party in reference to it. . . . So, if the hiring is of a room or rooms in a building, destruction of the building by fire puts an end to the lease [citing cases]." (*Whitaker v. Hawley,* 25 Kan. 674, 685, 686).

And this from one written by Mr. Justice Joseph R. Lamar:

"The word 'repair' means to renew or to restore an existing thing—not to make a new one. A covenant to repair ordinarily does not bind the landlord to rebuild, though there are cases in which the word 'repair,' aided by the context, has been held to mean 'rebuild.'" (*Gaven v. Norcross,* 117 Ga. 356, 361.)

We do not think the fact that a lease covering a part of a building contains the statement that the landlord agrees to keep it in repair has any fair tendency to indicate that the parties actually contemplated an obligation on his part to rebuild in case the whole house should be destroyed, and we see no sufficient grounds to interpret the language as imposing that duty upon him. The situation impresses us as one for the application of the principle under which the performance of a contract is excused where through no fault of the parties its subject matter, without which it cannot be executed, has ceased to exist.

In a recent case a landlord was held to be under an obligation to restore the leased premises after their being "damaged by fire and thereby rendered wholly untenantable," and the opinion contains matter tending to support the plaintiff's contention in the present case. (*Oppenheimer v. Szulerecki,* 297 Ill. 81.) There, however, the lease covered the entire building and provided that "in the event the demised building, or any part thereof, should be rendered untenantable by fire or other casualty the lessor should restore the same within ninety days," and the controversy was largely over questions of procedure.

The judgment is affirmed.