**HEART OF AMERICA LUMBER CO. v. BELOVE.**

**No. 11588.**

Circuit Court of Appeals, Eighth Circuit.

May 6, 1940.

536

Lancie L. Watts and Paul E. Basye, both of Kansas City, Mo., for appellant.

Harry L. Jacobs and Charles A. Whitebook, both of Kansas City, Mo. (I. J. Ringolsky and William G. Boatright, both of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment of dismissal entered on motion of appellee for a summary judgment pursuant to Rule 56(b) (c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The action was brought by appellant as plaintiff below to recover damages for breach of covenant of a lease. It will be convenient to refer to the parties as they were designated in the lower court.

The petition alleges that on June 1, 1936, one J. E. Turner and the defendant entered into a lease in writing whereby defendant leased to said J. E. Turner a three-story brick building situated on Lot 42, Block 115, Wyandotte City, now a part of Kansas City, Kansas, for a term of five years beginning the first day of June, 1936, and ending the last day of May, 1941, at a monthly rental, payable in advance; that by virtue of the lease the defendant covenanted that the lessee should peaceably and quietly occupy and enjoy the building for the full term mentioned in the lease; that if the building should become so damaged by fire as to render the same untenantable, she would repair the same within a reasonable time; that at the time the lease was executed by the parties, Turner was acting as the agent and for the benefit of plaintiff, with the intention that the property so leased was to be occupied and used solely for the benefit of plaintiff, and that the defendant knew such to be the fact at the time of the execution of the lease; that plaintiff had been in the occupancy of these premises under a former lease dated January 1, 1936, between the defendant and the said Turner for plaintiff's benefit, and that during the existence of that lease plaintiff had used the premises for the conduct of a retail and wholesale sporting goods mercantile business; that on January 23, 1939, the building covered by the lease was so damaged by fire as to render it untenantable and unfit and valueless for mercantile purposes; that plaintiff gave due notice of the fire damage and stood ready at all times to pay the rents reserved in the lease, but defendant failed to repair the building within a reasonable time or to permit plaintiff to occupy or enjoy the premises, but instead erected on the premises a one-story building, which on March 1, 1939, she leased for a term of five years to a third party, thereby evicting plaintiff. A copy of the lease was attached to and by reference made a part of the petition. It contained provision as follows: "In case the building leased hereunder should become so damaged by fire as to render the same untenantable for use, the lessor agrees to repair the same within such reasonable time as may be necessary for the making of such repairs, and during such period only on such account as the lessee may be deprived of the use of or occupancy of said premises, the monthly payment of rent as herein expressed, may be suspended, but such condition shall in no wise affect the period for which this lease is to run."

The lease contained further provision that the lessee would keep the premises in ordinary good repair at his own expense, and at the expiration of its term would deliver possession of the premises in as good repair as they then were, usual wear and tear excepted. It provided that its conditions should "extend to and be binding

upon the heirs, assignees and legal representatives of the parties hereto." It also contained provision that it should not be assigned or transferred to any other person without the consent in writing of the lessor. By written endorsement upon the lease, plaintiff, Heart of America Lumber Company, in consideration of the execution of the lease between Sarah B. Belove and J. E. Turner, guaranteed "the performance by J. E. Turner of each and all of the terms, conditions and provisions in said lease contained, including the prompt payment of the monthly rental therein provided."

The answer of the defendant set forth the various provisions of the lease, the guaranty of performance, and alleged a total destruction of the leased premises. The motion for summary judgment or judgment on the pleadings was based upon the grounds: (1) that plaintiff was not the designated tenant in the lease; (2) the provision for repair of the leased premises could not apply because the building leased was totally destroyed. Defendant submitted an affidavit showing that J. E. Turner, who was treasurer of the plaintiff, wired defendant on the night of the fire as follows: "Building practically destroyed by fire tonight." In a letter of January 24, 1939, he wrote plaintiff, stating that, "* * * the building was entirely gutted. All floors fell through into the sub-basement and only the walls left standing. So the building I would say was a total loss." In a letter of January 24, 1939, he said, "I received your wire and in reply will advise that the building is a total wreck. The third, second and first floors fell in on the basement floor and carried the whole thing down into the sub-basement."

The affidavit submitted on behalf of the defendant contained the following, referring to the condition of the building after the fire:

"Affiant states that he resides in Kansas City, Missouri, and learned of the fire immediately after same occurred; that he thereupon went to the demised premises and viewed same. Affiant states that the former building was completely destroyed and fallen in. Nothing remained except the two side walls which are party walls, being walls of the adjoining buildings. A portion of the wall was standing, but same was beyond use and readily fell over, and

was pulled down because same was dangerous.

"Affiant superintended the erection of a new building on said premises and consulted architects and builders, and was advised by them before erecting said new building that the former building was beyond repair or restoration, and that the building was a total wreck, and a total loss. Affiant states that he handled the adjustment of insurance and the Insurance Adjuster without any controversy whatever paid for the loss as a total loss."

J. E. Turner, named as lessee, filed an affidavit in which he stated: "On January 23, 1939, a fire practically destroyed the premises. The roof fell in, likewise the third floor. Part of the first and second floors fell into the basement, while parts of each floor remained intact. The party walls were intact and were subsequently used in the erection of a new one-story building. The front and rear walls were practically intact except for the windows. In rebuilding, the upper two stories were torn down and the front wall was re-faced and the back wall was used in its original form. All that was done was to clean out the debris. In removing the damaged merchandise from the premises, after the fire, a large part of it on the second floor was taken out through the second floor windows."

The court held that it appeared from the pleadings and the affidavits that the building was totally destroyed and that neither under the covenants of the lease nor the law of Kansas was there any obligation on the part of the lessor to rebuild. Summary judgment was thereupon entered for defendant and plaintiff has appealed.

Plaintiff's contentions on this appeal are substantially as follows: (1) the pleadings, admissions on file, and affidavits presented a genuine issue as to the extent of the damage to the leased premises and showed that the building was damaged but not totally destroyed; (2) the total destruction of the leased premises, even if established, would not terminate the lease; (3) a principal may sue on a lease made in its behalf, although made in its agent's name. As the last noted contention goes to the right of the plaintiff to maintain this action, we shall consider it first.

It is the claim of the plaintiff that it may maintain this action as an undisclosed principal. It is generally held

that the undisclosed principal is a party to the contract and may bring suit to enforce it, and it may be enforced against him, unless the contract is a negotiable instrument or a contract under seal. But the contract and circumstances may be such as to preclude the contention that the party seeking to enforce it was an undisclosed principal. If the agent acting for an undisclosed principal so acts or contracts that a claim that he is the contracting party and not an agent for an undisclosed principal appears to exist as an essential part of the contract, or the relationship appears as the assertion of a material fact bearing on the interrelationship of the parties or the character in which they contracted, the undisclosed principal will not be made or permitted to make himself a party. Thus, where an agent is referred to in the contract as the owner of the property with reference to which he contracts, this description is not to be changed by the substitution of another who claims that status with reference to the property, though he do it as an undisclosed principal. Humble v. Hunter, 12 Q.B. 310; Sladovich v. Glazer, 150 La. 918, 91 So. 297; Crowder v. Yovovich, 84 Or. 41, 164 P. 576; Pope v. Landy, Del. Super., 1 A.2d 589; Western Sugar Refining Co. v. Helvetia Swiss Fire Ins. Co., C.C., 163 F. 644; Coast Fisheries Co. v. Linen Thread Co., D.C., 269 F. 841; Williston on Contracts, Vol. 1, p. 843; Restatement, Agency, Vol. 1, Sec. 147.

In Pope v. Landy, supra, the Superior Court of Delaware said [1 A.2d 592]: "But an undisclosed principal can neither sue nor be sued on a contract in writing, if proof of the agency of the person actually signing that contract would violate any of its provisions. In other words, a person who signs a contract expressly as principal cannot be permitted to show, in contradiction of the written instrument, that he was merely acting as an agent for another. * * * And this rule has been applied when there is an express representation or assertion of a fact in the contract indicating an intent of a party to contract as a principal, and, therefore, not in any other capacity."

Professor Williston, in his work on Contracts, supra, states the rule as follows: "An exception to the right of recovery by the undisclosed principal has been made where the agent expressly asserts in the contract that he is the principal. In such a case another who is actually the principal, has been denied the right to sue."

The plaintiff here, claiming to be the undisclosed principal, is a corporation, but the lease recites that the full performance of its conditions shall "extend to and be binding upon the heirs, assignees and legal representatives of the parties hereto." It does not purport to be binding upon successors. The lessee, Turner, was treasurer of the Heart of America Lumber Company, and in that capacity and acting on behalf of that company, he executed the guaranty endorsed upon the lease. It is too clear for argument that plaintiff did not guarantee performance of its own obligations. The lease also contains provision that it "shall not be assigned or transferred to any other person, persons, or corporation, without the consent in writing of the lessor, endorsed hereon by herself or her duly authorized agent." Turner was designated as the lessee, and he signed the contract as lessee. By the recitals in the lease and by the guarantee, the relationship and the status of the parties were fixed and determined. The defendant, Sarah B. Belove, was the lessor, J. E. Turner was lessee, and Heart of America Lumber Company was guarantor. It is also to be observed that subsequent to the fire, not the plaintiff but J. E. Turner gave notice to the defendant. It was not the plaintiff, but J. E. Turner who wrote the defendant on January 24th and again on January 26th. It was J. E. Turner who wrote the defendant on February 9th, stating that he was interested in knowing how quickly the building would be repaired. In none of the correspondence following the fire is the plaintiff mentioned. Turner was an officer of the plaintiff, and this correspondence indicates what interpretation the parties themselves placed upon this contract. We are of the view that plaintiff could not maintain this action as the undisclosed principal of the lessee.

The lower court held that the premises were shown to have been totally destroyed, and that there was no obligation on the part of the lessor to rebuild in the event of total destruction. The lessor's covenant bound her to repair the premises if they became so damaged by fire as to render them untenantable. It did not, however, bind her to rebuild the structure. As said in Nixon v. Gammon, 191 Ky. 175, 229 S.W. 75, 77: "If a house be destroyed

by fire, to restore it would not be to 'repair' it, but to 'rebuild' it, and this is true even if the walls or some part thereof be standing in substantially the same condition in which they were before the fire."

Plaintiff places great reliance upon the case of Oppenheimer v. Szulerecki, 297 Ill. 81, 139 N.E. 325, 28 A.L.R. 1439. The contract in that case, however, was to "restore," which is a much broader term than to "repair." About all that remained of the structure described in the lease were the party walls with certain fragmentary parts of the rear and front walls. The building as an entity no longer existed; it was a ruin. To render it tenantable required more than repairs. It had to be restored and rebuilt, and we conclude that the court properly held that there was no genuine issue as to any material fact. In case of a total destruction of the leased premises, the law of Kansas absolves the tenant from a further duty to pay rent, and the lessor from a further duty to repair, unless there is a provision in the contract to the contrary. Whitaker v. Hawley, 25 Kan. 674, 37 Am.Rep. 277; Electric Service Co. v. City of Mullinville, 125 Kan. 70, 262 P. 536; O'Neal v. Bainbridge, 94 Kan. 518, 146 P. 1165, Ann.Cas. 1917B, 293; Saylor v. Brooks, 114 Kan. 493, 220 P. 193. The premises being situated in Kansas, of course, the law of that state must govern.

In Saylor v. Brooks, supra, plaintiff leased the basement and first story of a two-story building, the lease providing that the lessor was to keep the premises "in good repair." The building was destroyed by fire. The lessor refused to rebuild, and the lessee brought an action for damages. In discussing the contention that the landlord's covenant to repair obligated him to rebuild where the premises were destroyed by fire, the court quoted from Wattles v. South Omaha Ice & Coal Co., 50 Neb. 251, 69 N.W. 785, 36 L.R.A. 424, 61 Am.St.Rep. 554, as follows [114 Kan. 493, 220 P. 194]: "What did the parties to this contract understand and intend by the terms 'repair' and 'keep in repair'? These words 'repair' and 'keep in repair' are not technical words, nor should they be given a technical or strained interpretation. They should receive their ordinary interpretation. To repair, as it is ordinarily used, means to amend, not to make a new thing, but to refit, to make

good or restore an existing thing. * * * When we speak of repairing a thing, the very expression presupposes something in existence to be repaired. If a carpenter contracts to repair a house, or a mason a chimney, the ordinary construction of these contracts would not be that these parties had agreed to build a new house or a new chimney."

The court concluded that a lease containing provision that the landlord agreed to keep the property repaired would not indicate that the parties contemplated or intended an obligation on the part of the landlord to rebuild in case the whole structure were destroyed.

We conclude that the lower court correctly construed the Kansas law as applied to the facts in this case, and the judgment appealed from is therefore affirmed.