BARNEY CHALIK,

*vs.*

ALEXANDER LEVY.

*New Castle, April 6, 1945.*

*Philip Cohen,* for complainant.

*W. Thomas Knowles,* of the firm of Knowles & Allmond, for defendant.

HARRINGTON, Chancellor: The complainant, a lessee of property in the City of Wilmington with an alleged option to purchase, seeks to compel the defendant, the lessor's grantee, with notice of the complainant's alleged rights, to execute and deliver a deed for the property on payment of the agreed purchase price.

The bill alleges that the complainant is the tenant in possession of certain premises known as 215, 217 Market Street in the City of Wilmington under a lease from one "Jacob A. Charles" of Reading, Pennsylvania, dated June 2, 1941; that until on or about September 1, 1944, the complainant paid rent monthly in advance to the said Jacob A. Charles as provided in said lease and in all other respects observed its covenants and conditions; that such lease provides:

> "In the event that the lessor has a bona fide offer to purchase the property during the term of this lease and/or any extension thereof, and such price is acceptable to the lessor, the lessor shall in such event advise the lessee of the price offered, and the lessee shall have the right within thirty days of such notice to purchase the property at such price for cash";

that the said Jacob A. Charles and Pauline Charles, his wife, became seized in fee of the demised premises as tenants by the entirety by deed from the Wilmington Savings Fund Society dated April 18, 1941; that in the execution and delivery of the lease to the complainant the said Jacob A. Charles was at all times acting both for himself and as agent for his wife; that by letter dated August 31, 1944, the landlord's attorney notified the complainant that Alexander Levy, the defendant, had made a *bona fide* offer to purchase the demised premises for $11,000; that letter also stated: "in accordance with your option, you are given thirty days from date of receipt of this notice to accept the same by purchase of said premises for $11,000"; that by letter dated September 25, 1944, the complainant by his attorney notified the attorney for Jacob A. Charles and Pauline Charles that he would exercise his right to purchase the property

for $11,000 cash within the time provided in the option and would be ready to consummate the transaction at the office of the lessor's attorney on September 26th at 2:00 p.m.; that a copy of this letter was also sent by registered mail to Jacob A. Charles; that on September 26, 1944, at the designated hour and place the complainant tendered $11,000 in cash and requested the deed for the leased premises; that he was then told that Jacob A. Charles and his wife had conveyed the premises in question to Alexander Levy by deed dated August 31, 1944; that before paying the purchase price and taking title to said premises, Levy knew of the lease and of the complainant's option to purchase contained therein and was present when Jacob A. Charles and Pauline Charles instructed their attorney to send the above notice to the complainant relative to his option to purchase the leased premises; that the defendant, Alexander Levy is not a *bona fide* purchaser of the said premises for value, without notice and was requested by the complainant's attorney to convey the said premises to the complainant upon the payment to him of the said sum of $11,000 but that request was refused. A copy of the complainant's lease is attached to the bill, and in part provides:

"This Agreement made this Second day of June in the year of our Lord One Thousand Nine Hundred Forty-one (41).

"Between Jacob A. Charles, party of the first part; and Barney Chalik (trading as Standard Wall Paper & Paint Company), party of the second part.

"Witnesseth: That the said party of the first part hath rented to the party of the second part, and the said party of the second part has rented from the party of the first part, all that certain store property,"

located on Market Street in the City of Wilmington for the term of one year from the first day of June, A. D. 1941. The rent was $1140 per year and payable in advance monthly.

The lease is not under seal but contains, among others, the following so-called covenants:

(1) "* * * the said party of the second part does hereby * * * covenant and promise to pay to the said party of the first part his Heirs or assigns the said rent in the portions aforesaid."

The party of the second part covenants that he will not let or demise the premises or any part thereof

(2) "* * * without the consent in writing of the said party of the first part his heirs or assigns * * *."

(3) "In the event either party does not give notice of their intention to terminate this lease, by giving ninety days' notice, in writing, of such intention prior to the termination thereof, the tenant shall remain until ninety days' notice in writing is given by either party hereto of their intention to terminate this lease at the rental of one hundred dollars ($100.00) per month.

(4) "At the expiration of the said term, or upon the breach by the said party of the second part of any of the covenants herein mentioned at the option, of the said party of first part, upon not less than ten days' written notice the said party of the second part shall and will yield up and surrender quiet and peaceable such of said premises with the appurtenance unto the said party of the first part his heirs or assigns * * *.

(5) "The party of the first part hereto shall have the right at all times of placing upon any portion of the said leased premises a sign or billboard indicating that the said premises are 'for sale or for rent.' "

The instrument is signed by "Jacob A. Charles," by "Barney Chalik" and by "Standard Wall Paper and Paint Company, per B. Chalik."

Following the signatures it provides:

(1) "In the event that either party does not give ninety days' notice of their intention to terminate this lease prior to the date of the termination thereof, then the lease shall continue and remain effective for another year and follow on from year to year until either party shall give at least ninety days' notice in writing to the other party of their intention to terminate this lease; * * *"

(2) The provision set out in the bill purporting to give the complainant the right to purchase the property is inserted here.

(3) "It is also agreed that the party of the first part is to supply the necessary heat.

(4) "This rider hereto attached becomes a part of the lease entered into this day between Standard Wall Paper & Paint Company and Jacob A. Charles."

That part of the lease is followed by:

"O.K. J A C                                              O.K. B. C."

It is conceded that in an appropriate case a grantee from a third person with knowledge of the complainant's prior contract rights will be directed to deed him the property on payment of the original agreed price (*Long v. Chandler*, 11 *Del.Ch.* 125, 98 *A.* 189; *Ehrenstrom v. Phillips* [not reported in State Reports] 77 *A.* 81; 136 *A.L.R.* 138); and payment was tendered but refused by the defendant. In attempting to establish his alleged rights the complainant relies on the law of undisclosed principal and agent in contracts not under seal when the contract is made in the agent's own name. See *Pope v. Landy,* 9 *W.W.Harr.* (39 *Del.*) 437, 1 *A.2d* 589.

It appears from the bill that the leased premises were owned by Jacob A. Charles and Pauline Charles, his wife as tenants by the entirety; and no right to purchase such property can be given a complainant by the lease of one tenant by the entirety alone. See *Heitz v. Sayers,* 2 *W.W.Harr.* (32 *Del.*) 207, 121 *A.* 225; *In re Giant Portland Cement Co.,* 26 *Del. Ch.* 32, 21 *A.2d* 697. The real question is, therefore, whether the allegation that in signing the lease Jacob A. Charles was acting both for himself and as agent for his wife is consistent with the provisions of that instrument and can be proved, at a later stage of the case, without varying its terms. In considering this question it must be conceded, however, that if a contract expressly represents or asserts that a party signs it as principal, he will not be permitted to show, in contradiction of its terms, that he was also acting as an agent for another; but that depends on the intent of the parties as shown by the language used. *Id.;*

*Heart of American Lumber Co. v. Belove* (8 *Cir.*) 111 *F.* 2d 535, 130 *A.L.R.* 658; 1 *Williston on Contr.*, 843. In principle *Pope v. Landy, supra,* is the controlling case though the earlier case of *Cartmell v. Nigro,* 19 *Del. Ch.* 231, 165 *A.* 625, was not called to the court's attention and may not be entirely consistent with its reasoning.

In both the preliminary part of the lease and in the body of it, including the so-called "rider" attached to it, Jacob A. Charles is referred to repeatedly "as the party of the first part" or "the said party of the first part." The term "either party" is also used more than once. In the "rider" the word "Lessor" is also used in referring to Jacob A. Charles; but all of these terms are merely of a descriptive nature and are not intended to be assertions or representations composing a material part of the contract. Nor is any different conclusion justified when they are read with the provision that the "rider attached hereto becomes a part of the lease entered into * * * between Standard Wall Paper & Paint Company and Jacob A. Charles." The reasonable inference is that that provision was merely of a descriptive and identifying nature and was not intended as an assertion that Charles was contracting as a principal only. An undisclosed principal may be bound by a contract not under seal made in the agent's name. *Pope v. Landy, supra.* Moreover, it is unnecessary for the complainant to allege that his authority to act as agent for his wife in executing the lease containing the option to purchase the property was in writing, in compliance with the statute of frauds (58 *Corp. Jur.* 1154; *Langdell Eq. Pl., Sec.* 111). *Sussex Investment Co. v. Clendaniel,* 15 *Del. Ch.* 19, 129 *A.* 919, did not involve a demurrer to the complainant's bill and does not stand for a different rule. It was before the court on final hearing and the effect of the evidence was being considered. The defendant raised no other questions.

The demurrer is overruled and an order will be entered accordingly.