JOSEPH WHITAKER v. LUCIEN HAWLEY, et al.

RES ADJUDICATA, Plea of, Sustained; Questions, Already Adjudicated. Under a written contract the plaintiff agreed to furnish the defendants the use of certain buildings, together with a large amount of personal property connected therewith, for the full term of two years, unless by fire, or forfeiture on the part of the defendants, the use of the property should be terminated earlier; and for such use the defendants were to pay the plaintiff as rent the sum of $275 per month, and pay all the taxes on the property, and pay for insuring the same, and keep the same in good repair, and redeliver the same to the plaintiff at the end of two years, unless the property before that time should be destroyed by fire, or unless on account of forfeiture the property should be redelivered earlier, or unless some new agreement should be made authorizing the defendants to retain the property for a longer period of time. Prior to the termination of the lease the buildings and nearly all the personal property were destroyed by fire or were greatly injured. Some time afterward the plaintiff commenced an action against the defendants for one month's rent for the property, for a period of time which had wholly elapsed after the destruction of the property by fire. The defendants, as a defense, alleged said destruction of the property by fire, and claimed that by reason thereof the lease was terminated, and that they were no longer under any obligation to pay rent for the property. The case was tried by the court without a jury, and the court found the facts and the law in favor of the defendants and against the plaintiff, and rendered judgment accordingly. Among other facts, the court found as follows:

"5. On the night of October 28, 1880, the buildings embraced in the lease were wholly destroyed by fire. At the same time, all the personal

property and other property mentioned in said lease was by the same fire destroyed or greatly injured, except two boilers and the land mentioned in the lease. The fire was accidental, and without fault of the defendants or either of them. . . .

"7. That about November 1, 1880, the defendants notified the plaintiff that they would no longer occupy or use said premises or property, and have not since that time occupied or used the same, and the plaintiff refused to receive the said premises, and has not received the same.

Afterward the plaintiff commenced another action against the defendants, setting forth as causes of action substantially as follows: 1. That the defendants had wrongfully converted $7,005 worth of the leased property to their own use. 2. That the defendants failed to properly insure the leased property at its full insurable value. 3. That the property was destroyed by fire through the fault and negligence of defendants. The defendants answered, setting up, first, a general denial; and second, the plea of *res. adjudicata.* With reference to the second defense, the court decided in favor of the defendants and against the plaintiff, and rendered judgment accordingly. *Held,* Not error. *And further held,* That the questions as to whether the defendants wrongfully converted any of the leased property or not, and whether the property was destroyed by fire through the fault and negligence of the defendants or not, were litigated in the plaintiff's action for rent, and that such questions had thereby become *res adjudicata;* and that the question whether the defendants failed to properly insure the leased property at its full insurable value, or not, was not only probably litigated in the plaintiff's action for rent, but that such alleged failure constituted a part of the same cause of action of which the plaintiff's cause of action for rent constituted another part, and therefore that this matter had also become *res adjudicata;* that all the several breaches of a single and entire contract, after such breaches have actually occurred, constitute only one cause of action; and this although an action might be maintained upon each of such breaches as it occurred, and before any subsequent breach occurred.

## *Error from Leavenworth District Court.*

THE opinion states the nature of this action, and the facts. Trial by the court and a jury at the September Term, 1882, when the court decided in favor of the plaintiff *Whitaker* and against the defendants *Hawley* and others with reference to the first cause of action stated in the plaintiff's petition, and against the plaintiff and in favor of the defendants as to the second and third causes of action set forth in the petition. The jury found a verdict for the plaintiff and against the defendants for $50.60, and judgment was rendered accordingly. The plaintiff brings the case to this court, and asks for a re-

versal of the decision with respect to the second and third causes of action contained in his petition.

*Lucien Baker*, for plaintiff in error.

*Stillings & Stillings*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced by Joseph Whitaker against Lucien Hawley and others, upon the following instrument, to wit:

"It is hereby agreed between Joseph Whitaker, of the county of Leavenworth and state of Kansas, of the first part, and John W. Dever, general superintendent of the Leavenworth syrup and sugar refinery, of the county of New York and state of New York, party of the second part, as follows: The said Joseph Whitaker, in consideration of the rents and covenants herein specified, does hereby let and lease to J. W. Dever and his associates, the beef-and-pork packing house, No. 1411, South Second street, situated upon a portion of block No. six (6), in Fackler's addition to Leavenworth city, Kansas, with all engines, boilers, machinery, scales and fixtures in said building, consisting of the engines, boilers, pumps, elevator machinery, three steam-tanks, and also a railroad switch with scales attached to weigh railroad cars, and one wagon-scales, appertaining to said leased premises, a schedule of said machinery to be prepared in duplicate on the 1st day of December, 1879, with the ground upon which the building is situated, and a strip of one hundred feet immediately south of said building at a right angle with Second street, and a strip north of said building seventy-five feet wide, at a right angle with the said Second street, said ground being parts of blocks six and seven (6 and 7), in Fackler's addition to Leavenworth city, Kansas, together with the use of the reservoir pipe and apparatus for supplying water on lots one (1) and two (2), in block No. nine (9), in said Fackler's addition to said Leavenworth city, for the term of two (2) years from and after the first day of December, 1879, on the terms and conditions hereinafter mentioned, and the payment of the sum of two hundred and seventy-five dollars ($275) per month as rent, for the use of the premises and property above described: *Provided,* That in case any rent

shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said Joseph Whitaker, his agent or attorney, to reënter said leased premises and to remove any and all persons therefrom.

"And the said John W. Dever does hereby hire, for the term of two years from the first day of December, 1879, and does hereby covenant and promise to pay to said Joseph Whitaker, as rent for the premises and property, the sum of two hundred and seventy-five dollars per month during the continuance of this lease, beginning December 1, 1879. And said party of the second part agrees to keep all the machinery and attachments thereto insured, at its insurable value, in some responsible company for the benefit of said Joseph Whitaker, during said term of two years, and also to pay all taxes upon all the machinery and fixtures placed by the second party in said premises. And the party of the second part also agrees that he will, at his own expense, during the continuance of this lease, keep the said premises and other property in every part thereof in good repair and working order, and will not release the whole of said property without the written consent of said Whitaker, but may associate other persons with him, and at the expiration of the term yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damages by the elements excepted. And the said party of the first part does covenant that the said party of the second part and his associates, on paying the rent as agreed and performing all the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the premises and property for the term aforesaid. The party of the first part further agrees that the party of the second part, during the pendency of this lease, shall have the privilege of purchasing said property in preference to any other party at the said price the premises, machinery, and fixtures herein mentioned; and should the said party of the first part desire to release the same at the expiration of this lease, the party of the second part is to have the refusal, if he shall pay as much as any other party.

"Witness our hands and seals, the 18th day of October, 1879.        (Signed)        J. W. WHITAKER.    [Seal.]
                                        J. W. DEVER,        [Seal.]
        *General Supt. Leavenworth Syrup & Sugar Refinery.*
    "Executed in presence of
        H. WOLLMAN, W. GREEN."·

The plaintiff, in his petition, alleged three supposed causes of action, in substance as follows:

*First,* A cause of action for $213.37, for goods, wares and merchandise alleged to have been taken by the defendants from the plaintiff and converted by them to their own use, between December 1, 1879, and March 23, 1880. This cause of action does not seem from the plaintiff's petition to have had any connection with the above-quoted instrument of lease, and whether it had or not can make no possible difference at the present time; but still we would suppose from other portions of the record that the property alleged to have been converted was a portion of the property leased by the plaintiff to the defendants.

*Second,* A cause of action for $15,000, for (1) a failure to insure the property leased by the plaintiff to the defendants from December 1, 1879, up to May 12, 1880; (2) a conversion on May 12, 1880, by the defendants, of $7,005 worth of such property; (3) a failure on May 12, 1880, and afterward, to insure a large portion of the property received by the defendants from the plaintiff under said lease; and (4) a failure to insure such of said property as was insured, at its full insurable value—the entire property received by the defendants under the lease being alleged to be worth $15,000, and the insurance effected on the same on May 12, 1880, being only for the sum of $3,800.

*Third,* A cause of action for $50,000, for a loss of buildings and personal property leased by the plaintiff to the defendants, and destroyed by fire on October 28, 1880, solely through the fault and negligence of the defendants.

The defendants answered, setting up, first, a general denial; and, second, the plea of *res adjudicata;* or in other words, that on December 3, 1880, more than one month after all the buildings and the entire personal property leased by the plaintiff to the defendants had been destroyed by fire, the plaintiff commenced an action against the defendants on said lease, for the rent of the property for the month of November, 1880, and that in said action all matters now presented

21 — 30 KAS.

for settlement and adjudication were then fully presented for a like settlement and adjudication, and were fully litigated upon the pleadings and the evidence, and were finally settled and determined in favor of the defendants and against the plaintiff. The case for rent referred to is the case of *Whitaker v. Hawley*, 25 Kas. 674. In the case for rent the case was tried by the court without a jury, and the trial court made the following findings of fact, to wit:

"For the purposes of this suit only, the court makes the following findings of fact:

"1. The plaintiff, by the lease sued on, rented the property therein mentioned, partly personal and partly real, to John W. Dever and his associates for two years from December 1st, 1879, to be used as a manufactory for glucose, syrups and sugar from corn, the rent to be $275 per month, payable monthly.

"2. Soon after the execution of said lease, and on the —— day of December, 1879, the said Dever associated with himself Lucien Hawley, Nicholas A. Jones, J. Martin Jones, C. V. N. Kittridge, Merritt H. Insley, and Matthew Ryan, as partners in the business to be carried on on said leased premises, and did conduct and carry on such business upon said premises for some time, and the said associates were carrying on such business upon said premises at the time of the fire hereinafter mentioned.

"3. That down to and including the month of October, 1880, the plaintiff demanded of the said firm, and collected the rents as specified in the above-mentioned lease, and the firm paid the same in accordance with the stipulations mentioned in said lease.

"4. That before the fire hereinafter mentioned — but at what date the proof does not disclose — the said Lucien Hawley, on behalf of himself and his associates, except Dever, asked of the plaintiff his written consent to the assignment of said lease by Dever to the firm aforesaid, which was refused, the plaintiff assigning as a reason for such refusal, that an assignment was unnecessary, inasmuch as the lease ran not only to Dever, but to his associates as well.

"5. On the night of October 28, 1880, the buildings embraced in the lease were wholly destroyed by fire. At the same time all the personal property and other property mentioned in said lease was by the same fire destroyed or greatly

injured, except two boilers and the land mentioned in the lease.   The fire was accidental, and without fault of defendants or either of them.

" 6.  That the fire left the premises and property mentioned in the lease in a condition in which the use of the same for the business for which it was rented was of no value, without an expenditure thereon greatly in excess of the value of the use of said premises for the remainder of the lease; but that the land, and such personal property as was not wholly destroyed, might have been of some use and value for other purposes, but was of no value to the lessees except in connection with the buildings and other property as they were before the fire.

" 7.  That about November 1, 1880, the defendants notified the plaintiff that they would no longer occupy or use said premises or property, and have not since that time occupied or used the same, and the plaintiff refused to receive the said premises, and has not received the same.

" 8.  That about December 1, 1880, the plaintiff demanded of the defendants payment in accordance with the stipulations of said lease, for rent for the month of November, 1880, which was by the defendants refused because of the condition in which the fire left the premises.

" 9.  On the 26th day of July, 1880, said Lucien Hawley, Nicholas A. Jones, J. Martin Jones, C. V. N. Kittridge, Merritt H. Insley and Matthew Ryan brought in this court, against John W. Dever, suit No. 7980, in which suit judgment was rendered against said Dever, as appears in journal 21 of this court, on pages 97 and 98, here referred to as part of these findings."

As a conclusion of law from the foregoing findings of fact, the trial court found that " the defendants are entitled to a judgment for costs," and rendered judgment accordingly.

The present case was tried by the court and a jury, and the court decided in favor of the plaintiff and against the defendants, with reference to the first cause of action as set forth in the plaintiff's petition, and against the plaintiff and in favor of the defendants with reference to the second and third causes of action as set forth in his petition.   The jury found a verdict in favor of the plaintiff and against the defendants for the sum of $50.60, and judgment was rendered accordingly.

The plaintiff now brings the case to this court, and asks for a reversal of the decision of the court below with respect to the second and third causes of action as set forth in his petition.

This case presents some very difficult questions. It will be seen that the lease was dated October 18, 1879, and was to have operation from December 1, 1879, up to December 1, 1881, unless for some fact or event subsequently transpiring its operation should be terminated earlier. Under such lease the plaintiff was to furnish to the defendants the use of his buildings known as the beef-and-pork packing house, together with a large amount of personal property connected therewith, for the full term of two years, unless by fire or forfeiture on the part of the defendants the use of the property should be terminated earlier, and for such use the defendants were to pay the plaintiff as rent the sum of $275 per month, and pay all the taxes on the property, and pay for insuring the same, and keep the same in good repair, and re-deliver the same to the plaintiff at the end of two years, unless the property before that time should be destroyed by fire, or unless on account of forfeiture the property should be redelivered earlier, or unless some new agreement should be made authorizing the defendants to retain the property for a longer period of time. It will be seen from the lease that a possible destruction of the property by fire was in contemplation of the parties at the time the contract creating the lease was entered into; and it was also in contemplation of the parties that such a destruction of the property would virtually terminate the lease. This has already been decided by this court. (*Whitaker v. Hawley*, 25 Kas. 674.)

The personal property leased consisted of a large number of separate articles; but as will be seen from the lease, none of them were leased separately. On the contrary, all of them, together with all the real estate, were leased in the aggregate as one comprehensive whole. In other words, the plaintiff did not agree to furnish these articles separately, or for a separate consideration, or for any specific consideration for any

particular portion of the property; but he in fact agreed to furnish the whole of the property, real and personal, in the aggregate and in gross, for the whole of the compensation in the aggregate and in gross. It was in fact the whole of the property leased for the whole of the compensation to be rendered — the aggregate amount of the one for the aggregate amount of the other. There was in fact to be no splitting of the one or the other, except that by a destruction of the property by fire, or a breach of the contract and forfeiture by the defendants, the further use of the property and the further compensation for such use were to cease. The forfeiture of the contract, however, or its termination because of a breach of the same by the defendants, was to be at the option of the plaintiff.

The plaintiff does not now claim that the court below erred except with respect to three items set forth in the second and third counts of his petition. These three items are as follows: (1) the alleged conversion of said $7,005 worth of property; (2) the alleged failure to insure the leased property at its full insurable value; (3) the alleged negligent permission of the destruction of the property by fire. These three items the plaintiff now claims constitute three separate and distinct causes of action, having no necessary connection with the plaintiff's previous action for rent.

The defendants however deny this claim. They claim that all the items alleged in the plaintiff's petition in the present case, together with all the items alleged in his former action for rent, cannot, in the aggregate or separately, be considered as constituting more than one cause of action. And they further claim that all such items, and the facts constituting the same — whether constituting one or more causes of action, or only a part of a cause of action — were in legal contemplation involved in the plaintiff's former action for rent, and were adjudicated and settled therein. The real questions, therefore, to be considered in this case are as follows: First, are the three items above mentioned, or any of them, a part of the same general cause of action, of which the plaintiff's

supposed cause of action for rent was another part? Second, are the facts constituting the three items above mentioned a portion of the same facts which were necessarily involved in the plaintiff's previous action for rent? In other words, could the defendants have defeated the plaintiff's action for rent, as they did, if it had been shown in that action that the property to be insured was worth $15,000, that the defendants wrongfully converted $7,005 worth thereof to their own use, that the remainder was insured for only $3,800, about half its insurable value? Or, in other words, could the defendants have defeated the plaintiff's action for rent, as they did, if it had not been affirmatively shown that all the property which was to be insured was properly insured, and that the great bulk of it was accidentally destroyed by fire, and that none of it was wrongfully converted by the defendants to their own use?

If the three supposed causes of action which we are now considering are a portion of a general cause of action, of which the plaintiff's supposed cause of action for rent was another portion, then of course the plaintiff cannot recover for such three causes of action in this action; for a party can never split a single cause of action into two or more parts, and maintain separate actions for all and each of the separate parts. In such a case it can make no difference whether the present three items were litigated in the plaintiff's former action for rent, or not; for a final determination in a suit for a part of a single cause of action is as complete a bar to another action for another part of the same cause of action as is a final determination in a suit commenced, and prosecuted in the first instance for the whole of the cause of action. And also, if the facts constituting the plaintiff's present alleged causes of action were necessarily involved in the plaintiff's action for rent, and decided against him, then the plaintiff cannot recover on such alleged causes of action in the present case; for whatever has been adjudicated and settled in one action, cannot be relitigated between the same parties in another action. And in such a case, it could make no difference

whether the three items above mentioned really constituted a portion of the same general cause of action, of which the cause of action for rent constitutes another portion, or not; for the rule of *res adjudicata* applies as well to facts settled and adjudicated as to causes of action. In other words, if the plaintiff is to recover in this action upon the three items above mentioned, it must be upon the theory that said three items constitute causes of action separate and distinct from the said cause of action for rent, and that the essential facts constituting these three items have not been settled or determined against the plaintiff in the action for rent, or in any other action. On the other hand, if the defendants defeat the plaintiff's action for these three items, it must be upon the theory, either that these three items constitute a part of the same cause of action of which the plaintiff's cause of action for rent constituted another part, or that the facts which constitute these three items, or an essential portion of them, were involved in the issues of the action for rent, and were by the decision and judgment in that case necessarily determined in favor of the defendants and against the plaintiff.

The defendants claim, in the language of the court of appeals of New York, that "in respect to contracts, express or implied, each contract affords one and only one cause of action. The case of a contract containing several stipulations, to be performed at different times, is no exception, although an action may be maintained upon each stipulation as it is broken, before the time for the performance of the others." (*Secor v. Sturgis*, 16 N. Y. 558.) The defendants cite several other cases as tending to sustain this doctrine, among which are the following: *Comm'rs of Barton Co. v. Plumb*, 20 Kas. 147; *Bond v. Sewing Machine Co.*, 23 Kas. 119; *Madden v. Smith*, 28 Kas. 798; *Bendernagle v. Cocks*, 19 Wend. 207; *Stein v. Steamboat "Prairie Rose,"* 17 Ohio St. 471, 475.

The plaintiff denies the authority of some of these cases, and denies the applicability of all of them. He cites on his side the following among other cases: *Badger v. Titcomb*, 32 Mass. (15 Pick.) 409; *Shaw v. Beers*, 25 Ala. 449; *Stifel v.*

*Lynch,* 7 Mo. App. 326; *McIntosh v. Lown,* 49 Barb. 550; *Perry v. Dickerson,* 85 N. Y. 345.

We suppose that the doctrine enunciated in the case of *Secor v. Sturgis,* ante, is generally correct; and, generally, that a breach or any number of breaches of a single contract can furnish, at one time, only one single cause of action. Of course where a contract contains several stipulations to be performed at different times, a cause of action may arise upon the breach of any one of such stipulations, and an action may be maintained at once upon such breach without prejudice to future actions upon subsequent breaches; but if no action is in fact commenced until after other breaches have occurred, then all the various breaches of the several stipulations will constitute only one comprehensive breach of the general contract, only one comprehensive cause of action on the entire contract. All of the various causes of action founded upon the several breaches in such case will be merged into one comprehensive cause of action. At each successive breach of a contract the cause of action on such contract will be enlarged, and no new cause of action will be created. The law abhors a multiplicity of suits, and for this reason, among others, courts generally construe all existing breaches of a single contract as constituting in the aggregate only one general breach of one general contract, one comprehensive infringement of one comprehensive primary right—the right to have the contract fulfilled in its entirety. According to the great weight of authority, such a breach in the aggregate constitutes only one cause of action. (Pomeroy's Remedies and Remedial Rights, §§ 452 to 461, and cases heretofore cited.) Hence, if the three items upon which the plaintiff now claims a right to recover are founded upon the aforesaid contract between the parties, then of course such items are a part of one general cause of action, of which the plaintiff's previous cause of action for rent was another part, and the plaintiff cannot recover in this action.

The plaintiff, however, claims that some of these items at least are not founded upon said contract, but are founded en-

tirely upon matters purely of tort. The defendants, on the other side, claim that the whole of these items, whether tortious in their character or not, are none the less founded solely upon the said contract between the parties. They further claim that even if they were founded upon tort, and have reference only incidentally to the contract, still that the facts upon which they are founded were litigated in the plaintiff's action for rent, and were decided against him; and therefore, for this reason if for no other, he would be barred from maintaining this action. This claim of the defendants, that the facts upon which the plaintiff's present three causes of action are founded have previously been litigated in the plaintiff's action for rent, we think is, partially at least, true. The trial court found in that action, among other things, as follows:

"*Fifth.* On the night of October 28, 1880, the buildings embraced in the lease were wholly destroyed by fire. At the same time, all the personal property and other property mentioned in said lease was by the same fire destroyed or greatly injured, except two boilers and the land mentioned in the lease. The fire was accidental, and without fault of defendants or either of them. . . .

"*Seventh.* That about November 1, 1880, the defendants notified the plaintiff that they would no longer occupy or use said premises or property, and have not since that time occupied or used the same, and the plaintiff refused to receive the said premises, and has not received the same."

Now these findings would certainly negative the claim of the plaintiff that any of the property had, prior to the fire, been wrongfully converted by the defendants to their own use; for all of the property, real and personal, except two boilers and the land, was destroyed by fire, or greatly injured, on October 28, 1880; and on November 1, 1880, the defendants notified the plaintiff that they would no longer use or occupy the property, and they have not done so since. These findings would also negative the claim of the plaintiff that the fire was caused through the fault or negligence of the defendants. These findings were material in the case.

The entire defense in that case was, substantially, that the defendants were not bound to pay the rent, for the reason that the great bulk of the property leased was totally destroyed and the remainder greatly injured by fire, without the fault or negligence of the defendants; and therefore that the lease was virtually terminated and the defendants were no longer responsible for the property or the rent thereof. Hence it will be seen that the foregoing findings of the trial court, in the action for rent, were essential and material in the case, and that the questions as to whether the defendants wrongfully converted any of the leased property or not, or whether the property was destroyed by fire through the fault or negligence of the defendants or not, were litigated in that action, and such questions have become *res adjudicata.* The question whether the defendants failed to properly insure the leased property at its full insurable value or not, was probably litigated in the plaintiff's action for rent; but whether it was or not, we think the alleged failure constituted part of the same cause of action of which the plaintiff's cause of action for rent constituted another part, and therefore that this matter has also become *res adjudicata.* The failure to properly insure occurred, if it ever occurred, long before the action for rent was commenced, and it was purely a breach of the contract, and by no possible ingenuity can it be transformed into a cause of action in tort. With reference to the doctrine of *res adjudicata,* in all its aspects and with reference to all kinds of cases, we refer to Wells on Res Adjudicata and Stare Decisis.

The judgment of the court below will be affirmed.

All the Justices concurring.