## D. N. BURDGE v. W. J. KELCHNER *et al.*

**No. 13,072.** (72 Pac. 232.)

SYLLABUS BY THE COURT.

1. TROVER AND CONVERSION — *Attachment — Liability of Officer.* Where a sheriff levies an order of attachment on part of a stock of goods, but takes and holds possession of the entire stock, and upon demand of the owners refuses to yield possession to them, and thereupon the owners declare that they will hold him responsible for all the goods held by him, and he answers that he will assume that responsibility, a right of action for the conversion of the entire stock arises in favor of the owners.

2. —— *Effect of Subsequent Levies.* The fact that other levies were subsequently made by the sheriff on other portions of the same stock did not affect the right of action of the owners for the wrongful possession first taken and which was never surrendered, nor subdivide their claim into several causes of action.

3. —————— *Multiplicity of Actions.*  A recovery for a part of the
goods so wrongfully taken is a bar to a later action between the
same parties to recover for the remainder of the same stock of
goods, although taken and sold under another attachment which
had been levied before the first action was brought.

Error from Shawnee district court; Z. T. HAZEN,
judge.   Opinion filed April 11, 1903.   Reversed.

STATEMENT.

P. J. M. BURKETT, who owned a stock of drugs,
organized the Topeka Drug Company and conducted
the business for a time in Topeka.   About November
12, 1894, he sold the stock to W. J. Kelchner and R.
J. Mackey.   Some of the creditors of Burkett chal-
lenged the honesty of the sale, and on November 14,
1894, Mary E. Crawford caused an attachment to be
issued, under which D. N. Burdge, as sheriff, levied
on a part of the stock of drugs, but took and held pos-
session of the whole stock and of the store building.
On November 26, 1894, the C. D. Smith Drug Com-
pany secured the issuance of an attachment which was
likewise levied on a portion of the same stock.   Two
other attachments were issued at the instance of other
creditors which were levied by the sheriff.   The en-
tire stock so seized under the several orders of attach-
ment was sold by the sheriff and the proceeds turned
into the court from which the attachments issued.

On February 27, 1895, Kelchner and Mackey began
an action against Burdge to recover for the conversion
of the goods taken under the order of attachment is-
sued in the Smith Drug Company case, claiming
damages for the seizure and conversion of a part of
the goods, and for breaking up their business, in the
sum of $2300.   In that case, which was known as
No. 17,042, a verdict was returned in their favor, upon

which judgment was rendered for $470.   On May 12, 1896, the present action was begun by Kelchner and Mackey against Burdge to recover for the seizure and conversion of the stock of goods taken under the attachment of Mary E. Crawford, together with other property which was not described, and also for the alleged damages for breaking up their business.   In addition to other defenses, Burdge alleged the bringing of the former action, No. 17,042, in which a recovery had been had against him for the conversion of a part of the same stock of goods, alleging that at the time of the commencement of the former suit there existed but a single cause of action and that the judgment in the former action, being fully paid and satisfied, was a satisfaction and bar of the claims made in the present action.   At the trial the following special questions asked by the defendant were answered :

"Ques. 1.  Did not the defendant take possession of the entire stock of goods, furniture and fixtures of the plaintiffs, including that part described in the petition in the case of W. J. Kelchner and R. J. Mackey, No. 17,042, in this court, and that part described in the petition in this case at the same time ? Ans. Yes.

"Q. 2.  Did the defendant ever return to the plaintiffs any portion of the stock of drugs, furniture and fixtures which he took possession of on the 14th day of November, 1894 ?  A. No.

"Q. 3.  Was the property described in the petition in said case No. 17,042 still in the possession of the defendant on November 26, 1894, when he indorsed a levy on the writ of attachment in the action of the C. D. Smith Drug Co. vs. The Topeka Drug Co. ? A. Yes.

"Q. 4.  Was not the property described in the third paragraph and count of the plaintiff's petition in this case still in the possession of the defendant in January, 1895, when he indorsed a levy on it in the second

writ of attachment in the action of Mary E. Crawford vs. the Topeka Drug Co. and P. J. M. Burkett?   A. Yes.

"Q. 5. Did the defendant take possession of any of the stock of goods, furniture and fixtures of the plaintiffs from the plaintiffs at any other time than on the 14th day of November, 1894, when he made the first levy?   A. No.

"Q. 6. After the defendant made the first levy on the goods, and before he made any other levy, did the plaintiffs, through their attorney, Ralph Ingalls, notify the defendant that they would hold him responsible for all the property in the store?   A. Yes."

Notwithstanding these findings, a general verdict in favor of the plaintiffs below was rendered for $1185.77.   Burdge alleges error.

*Bergen & Dana*, for plaintiff in error.

*Garver & Larimer*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:  The controlling question in this case is whether the former action between the same parties for a portion of the same stock of goods seized and converted by Burdge was a bar to another recovery in this action.  It is well settled that a party cannot split up his demand or cause of action against another into several suits, and, if he does so and recovers upon a part, it will bar a further recovery upon such demand.   (*Price v. Bank*, 62 Kan. 735, 64 Pac. 637.)   The law has a great aversion for multiplied, unnecessary, and vexatious suits.   The doctrine of *res judicata*, which accords with substantial justice, forbids the bringing of several vexatious lawsuits upon issues which might have been litigated in a single one.   (*Coal Co. v. Brick Co.*, 52 Kan. 747, 35 Pac. 810.)   The tendency of courts is to require a

party who brings a matter into litigation to present his entire case and all of the evidence then available ; and also to regard a judgment in the case as conclusive between the same parties upon all things essentially connected with the subject-matter of the litigation and which the parties might have had decided. ( *Whitaker v. Hawley*, 30 Kan. 317, 1 Pac. 508 ; *Hoisington, Sheriff, v. Brakey*, 31 id. 560, 3 Pac. 353 ; *W. & W. Rld. Co. v. Beebe*, 39 id. 465, 18 Pac. 502 ; *Shepard v. Stockham*, 45 id. 244, 25 Pac. 599 ; *Ellis v. Crowl*, 46 id. 100, 26 Pac. 454.)

In both of the actions brought by plaintiff below the parties were identically the same, and in both the purpose was to recover for parts of the same stock of goods, wrongfully taken and converted by Burdge prior to the bringing of the first action. It is true that two orders of attachment were placed in Burdge's hands under which two different levies were declared by him on goods in the store, and under each different portions of the goods were appraised. All of the goods, however, were kept in a single storeroom, of which Burdge took possession under the first levy, and he practically excluded Kelchner and Mackey from possession or control of the same from the beginning. When the levy was first made the key to the building was placed in the hands of an indifferent person, not to be delivered except with the consent of all parties. About the time that the appraisement under the first writ was completed, Burdge took absolute possession, placed another lock on the door, and prior to the levy of the second attachment exercised complete dominion over the store and its contents.

It is argued by defendants in error that each levy constituted a distinct wrong and cause of action, and

that, while both might have been united in a single
suit, they were not compelled to join them, nor barred
as to one by the adjudication of another.    Whatever
may be the rule where several levies are made at dif-
ferent times on parts of defendant's property and the
appropriation and conversion of all is complete before
any action is brought, the finding of the jury settles
the question that Burdge took possession of the entire
stock at the beginning and retained possession and
dominion over it until it was sold and disposed of.
There was no other or different taking of possession
by Burdge after the first levy, nor any surrender of
the possession taken.

   If there were anything lacking to complete the con-
version of the property and to give plaintiffs below
the right to bring a single action for the entire stock,
there certainly was not after Kelchner and Mackey,
through their attorney, demanded the release of the
goods and notified Burdge that they would hold him
responsible for the entire stock, and the response by
Burdge that he would assume the responsibility and
would lock up and hold the entire stock.    This oc-
curred about two days after the first levy was made,
and about ten days before the second levy, and the
jury in this case have specifically found that the plain-
tiffs below, themselves, fixed the liability of Burdge
by the notice that they would hold him responsible
for all the property in the store.    Burdge held exclu-
sive possession of all the goods in the store, and upon
demand of Kelchner and Mackey refused to yield the
possession of any of them.    They said to him :  "We
will hold you responsible for the entire stock."    He
replied :  "All right.    I will assume responsibility for
the entire stock."    From that time, at least, Kelchner
and Mackey had a right of action against Burdge for

the value of all the goods, and if they had brought such action, an answer that he had only levied on a part of those which he was holding against them would have been no protection to him.    The fact that other levies were subsequently declared did not change their demand for the wrong done by Burdge, nor subdivide it into several causes of action.    Again, every levy and every step incident to the wrongful possession of Burdge had been made and taken before the first action was brought.    The full extent of the loss suffered by the wrong-doing of Burdge had been developed, and hence should have been included in the first suit.

In *Thisler v. Miller*, 53 Kan. 515, 36 Pac. 1060, 42 Am. St. Rep. 302, where the claim was made that the attorney for plaintiff acted under a misapprehension when he admitted in the second case that all the animals sought to be recovered in both cases had been taken at the same time, the court treated the mistake of counsel as of little consequence and regarded the fact that the sheriff held the possession of all the animals when the first action was brought against him as of more importance than the seizure of the animals at different times.    It was there said :

"More than that, the testimony offered on the motion for a new trial, and upon which the ruling of the court was based, tended to show that all the animals were within the possession of the sheriff, and were being detained by him at the time the first action of replevin was brought.    If that was the case, the first action should have been brought for the recovery of all."

Under the evidence and the findings of the jury, the judgment in the first case must be held to be conclusive on the parties as to all the property taken by

Burdge and a bar to any further recovery. The judg-
ment will be reversed and the cause remanded, with
instructions to render judgment on the findings in
favor of the plaintiff in error.

All the Justices concurring.