**UNITED STATES FIDELITY & GUARANTY CO. v. GREAT SOUTHWESTERN PETROLEUM CO. et al.**

No. 11694—Opinion Filed Oct. 30, 1923.

Rehearing Denied Jan. 29, 1924.

1. **Action—Splitting Cause of Action—Effect of Assigning Part of Contract to Several Individuals.**

A creditor having a single cause of action for a sum of money cannot by assignment split up such cause of action and thereby subject the debtor to a number of suits based on such assignment.

2. **Damages—Liquidated Damages or Penalty.**

A provision in a drilling contract providing that, should the drilling contractor fail to commence drilling a well on or before a given date that he shall pay $2,500 as liquidated damages for failure to commence drilling by the date fixed, is void, when by the nature of the case it would not be extremely difficult to fix the actual damages for breach of the contract. See sections 5068, 5069, Comp. Stat. 1921.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action by Great Southwestern Petroleum Company et al., against United States Fidelity & Guaranty Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

This is a suit against the plaintiff in error by the defendants in error on a bond executed by the United States Fidelity & Guaranty Company, plaintiff in error, as surety for the American National Oil Company to the Great Southwestern Petroleum Company, a corporation, to recover $2,500, the penalty of said bond for a failure to begin the drilling of a well on certain leases of the defendants in error. The petition alleges that the American National Oil Company contracted with the Great Southwestern Petroleum Company to drill a well near Ft. Cobb, Okla., and that under the terms of the contract the American National Oil Company was to begin drilling a well on some part of said leased premises on or before the 2nd day of May, 1918, or in case of its failure to commence drilling within that time, the American National Oil Company should forfeit $2,500 for failure to commence drilling on or before that date, and the United States Fidelity & Guaranty Company executed a bond guaranteeing the contract of the American National Oil Company and agreeing to pay said amount of $2,500 in case the American National Oil Company did not commence drilling on or before the 2nd day of May, 1918. The petition also alleges that after the making of said contract, and before the 2nd day of May, 1918, the American National Oil Company obtained an extension of time from May 2, 1918, of two months within which operations were to be commenced on said leased premises by the said American National Oil Company. The petition alleges that

the American National Oil Company failed to commence within the time extended and have never commenced the drilling on said premises, and have thereby forfeited to the defendants in error $2,500 as liquidated damages under said contract and indemnity bond, and prays judgment for said amount with interest at six per cent. from May 2, 1918. The defendant, United States Fidelity & Guaranty Company, answered, first, by a general denial of all allegations of plaintiffs' petition except those specifically admitted. It admits that the Great Southwestern Petroleum Company did assign to its coplaintiff a one-half interest in the indemnity bond as in plaintiffs' petition alleged, but alleges that according to the contract, which it made exhibit "B" to said petition, it became, and was, the duty of plaintiffs to deliver certain oil leases on the land described in said contract, and that the plaintiffs committed a breach of said contract by failing to deliver good title to the leases upon said land. This defendant further alleged that the American National Oil Company had complied with its part of the agreement referred to in plaintiffs' petition; that it was the duty of the plaintiffs to furnish abstract to said leases, but they failed to do so, and although it was plaintiffs' duty to furnish such abstract, that it had made abstracts of title to said property by competent abstracters; that said abstracts were duly examined by a competent attorney for said American National Oil Company, and a written opinion of said attorney rendered to said American National Oil Company, and that in the opinion of said attorney the title to several tracts of the land were not perfect in plaintiffs' lessors; that plaintiffs had knowledge or notice of said defective titles and that they had never perfected nor offered to perfect the same.

Defendant, further answering, said, that on or about the 13th day of March, 1918, the plaintiff entered into a written agreement with all of the lessors described in plaintiffs' petition and with James E. Calvin and D. H. Meador, acting as a committee and as agents for the lessors, whereby in consideration of $1 and other valuable consideration, the said lessors were to participate in the benefits accruing or to accrue from the bond or any money in anywise collected under said bond an interest in said sum of $1,250, being a one-half of the penal or full sum of said bond. That thereafter various extensions of time were made within which the American National Oil Company might drill or commence to drill a well upon any of said tracts of

land. Defendant further says that the said extension of time were obtained without the consent or knowledge of this defendant.

Defendant further states in its answer that the plaintiffs herein have not been damaged by reason of the failure of the American National Oil Company to drill or commence to drill an oil and gas well upon any of the tracts of land in plaintiffs' petition described prior to the 2nd day of May, 1918, for the reason that the said leases were not forfeited until after the date; nor were the options to acquire said leases under contract of this plaintiff, the Great Southwestern Petroleum Company, with the lessors herein referred to, to expire until after said date of May 2, 1918, by reason of the fact that said lessors had before and after said date continued said options and leases in full force and effect. To this answer, the plaintiffs filed a reply which is in the nature of a general denial, and on these issues the case was tried and judgment was rendered against the United States Fidelity & Guaranty Company in the sum of $2,500, with interest thereon from the 2nd day of May, 1918. The applicable part of the bond upon which the court entered judgment is in the following words:.

"It being further understood and agreed that the sum of twenty-five hundred dollars ($2,500.00) is the amount in damages agreed upon between the parties to said contract which the Great Southwestern Petroleum Company will suffer by reason of failure on the part of the American National Oil Company to commence said operations upon said leases on or before the 2nd day of May, 1918. It being further understood and agreed that the actual damages which the Great Southwestern Petroleum Company would suffer by reason of the failure on the part of the American National Oil Company to keep and perform its contract are impossible of estimation and calculation and cannot at this time be determined."

The evidence shows that after the execution of this bond, to wit, on the 13th day of March, 1918, the Great Southwestern Petroleum Company entered into a contract assigning a one-half interest in this bond to some 30 odd persons who are named herein as defendants in error, which said contract is in words and figures as follows, to wit:

"Exhibit 'A.' Agreement. For and in consideration of $1.00 and other valuable consideration, to us in hand paid by the Great Southwestern Petroleum Company we, the undersigned, do hereby and by

these presents agree that the terms and conditions of one certain contract entered into by and between us and Samuel Gordon, and by him assigned to the Great Southwestern Petroleum Company, shall be construed and interpreted so as to fix the date for the commencement of operations on the properties mentioned in said contract on the 2nd day of May, 1918; the contract herein mentioned is referred to herein and made a part hereof, same as through it was incorporated in full in this agreement.

"As a further consideration it is agreed that the Great Southwestern Petroleum Company will accept such contract upon the within and foregoing conditions without qualification.

"As a further consideration the Great Southwestern Petroleum Company have this day placed in escrow in the Washita Valley Bank of Ft. Cobb, Oklahoma, a bond executed by the U. S. Fidelity & Guaranty Co., to the Great Southwestern Petroleum Company, the substance of which is to guarantee that the American National Oil Co. will commence operations on one of said leases on or before the 2nd day of May, 1918; and in case operations are not commenced within the time specified, the undersigned parties are to have $1,250.00 interest in said bond and all that may be recovered therein.

"In Witness Whereof, we have hereunto set our hands and seal, this 13th day of March, 1918. Great Southwestern Petroleum Co. By Samuel Gordon, Secretary. James E. Calvin, D. H. Meador, Otto Wray, J. W. Goodwin, R. E. Rogers, L. J. Southwick, Henry Garrett, E. VanZandt, F. W. Price, W. F. Fisher, I. M. Westfall, W. C. Honsley, J. N. Carr, J. B. Rowlett, W. P. McPherson, Ralph P. Ratliff, T. A. Roddy, G. L. Barney, R. G. Nance, W. S. Keever, R. C. Bergdorg, Geo. A. Allingham, W. O. Walling, J. D. Wilson, S. P. Ratliff, J. M. McPherson, J. M. Jackson, Mary E. Hall, and T. D. Churchill."

The original contract between the Great Southwestern Petroleum Company and the American National Oil Company is an ordinary drilling contract with the clause relating to liquidated damages which is incorporated in the bond and above quoted in this statement.

The plaintiff in error has grouped its defenses in its argument under three heads. First. That neither by allegation in the pleadings nor by any evidence is a cause of action alleged or shown in favor of the individual plaintiffs against this defendant. Second. That the bond sued upon in this case is absolutely void. Third. The demurrer to the evidence must be sustained for the reason that the plaintiff has failed to show substantial performance of his part of the contract. We will take them up in their order.

Ames, Chambers, Lowe & Richardson and Frank Bonar Hegarty, for plaintiff in error.

L. D. Mitchell, for defendants in error.

Opinion by MAXEY, C. The first proposition urged by plaintiff in error is: That neither by allegation in the pleadings nor by any evidence is a cause of action alleged or shown in favor of the individual plaintiffs against the defendant. Under this proposition, plaintiff in error insists that the assignment of a one-half interest to the various individuals, defendants in error, without notice to it, or without its acceptance of such assignment has the effect of discharging it on its bond. On this proposition, he cites the case of Mandeville v. Welch, 5 Wheaton, 277, which is a case involving an assignment of an interest in a contract to various individuals and where the same defense was urged by the surety as here. Justice Story, in delivering the opinion of the court, in discussing this particular part of the defense, said:

"The reason of the principle is plain. A creditor shall not be permitted to split up a single cause of action into many actions, without the assent of his debtor, since it may subject him to many embarrassments and responsibilities not contemplated in his original contract. He has a right to stand upon the singleness of his original contract, and to decline any legal or equitable assignments by which it may be broken into fragments. When he undertakes to pay an integral sum to his creditor, it is no part of his contract that he shall be obliged to pay in fractions to any other persons."

He also cites the case of German Fire Insurance Company v. Bullene, from the Supreme Court of Kansas, 33 Pac. 467, and quoting from the syllabus, the court says:

"A creditor, having a single cause of action for a sum of money, cannot by assignment split up such cause of action and thereby subject the debtor to a number of suits based on such assignment."

Judge Allen in the body of the opinion says:

"It is a very general rule that a creditor cannot by assignment, or in any other manner, split up his cause of action, and thereby subject the debtor to multiplicity of suits or conflicting demands upon him." —citing Mandeville v. Welch, 5 Wheat. 277; Insurance Co. v. Davenport, 37 Mich. 609; Insurance Co. v. Felrath, 77 Ala. 194; Thatcher v. Insurance Co., 11 Fed. 29;

Stearns v. Ins. Co., 124 Mass 64; Whitaker v Hawley, 30 Kan. 326, 1 Pac. 508.

The second proposition urged by plaintiff in error for a reversal is that the bond sued upon in this case is absolutely void, and bases its argument largely on two sections of our statute, to wit: Sections 5068 and 5069, Comp. Stat. 1921, which read as follows:

5068. "Attempt to fix damages void except as provided. Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by the next section."

5069. "Same—Exception. A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

These sections of our statute have been construed in a number of cases by our Supreme Court. In Mansur-Tibbets Implement Co. v. Willet, 10 Okla. 383, 61 Pac. 1066, it was held:

"A clause or provision in a contract for the sale of personal property, where the legal title remains in the vendor, which stipulates for twenty per centum of the purchase price thereof as liquidated damages on failure to receive such property, is in conflict with section 857 and 858 of the Code (1893), and therefore void. The measure of damages in such a case is, if the property has been resold, the excess, if any, of the amount due from the buyer, under the contract, over the net proceeds of the resale, or if the property has not been resold the difference between the value of such property to the seller and the price fixed in the contract, plus all necessary expenses in marketing or reselling the same, such sales to be made by the vendor in the same manner as if the property has been pledged to him; and where a plaintiff proves a violation of such a clause in a contract, but fails to prove that any actual damages were sustained by reason thereof, a demurrer to the evidence should be sustained."

The question was again before this court in the case of Haier v. McDonald et al., 21 Okla. 470, 96 Pac. 654, where it was held:

"A clause or provision in a contract providing that either party failing to comply with and perform said contract shall pay to the other party the sum of $500, is in conflict with section 816, Wilson's Rev. & Ann. St. 1903, and therefore void, when by the nature of the case it would not be impracticable or extremely difficult to fix the actual damages for breach of the contract."

Again, in the case of Deming Investment Co. v. Baird, 32 Okla. 393, 122 Pac. 676, this court said:

"Where two parties enter into a written contract, wherein the second party is appointed as agent of the first party for the negotiation of a loan, and such contract provides that if the loan is negotiated, and the first party fails or refuses to accept it, he will pay to the second party five per cent. of the amount of the loan as damages for such failure or refusal, held, that such provision is in conflict with section 1126, Comp. Laws 1909, and void."

Again, in the case of Childs v. Moore et al., 57 Okla. 638, 157 Pac. 333, the court said:

"A provision in a contract providing that, should either party make a default in the terms thereof, each agrees to pay the adverse party the sum of $100 as liquidated damages, is void, when by the nature of the case it would not be extremely difficult to fix the actual damages for breach of the contract."

Again, in the Home Pattern Co. v. Mascho, 46 Okla. 55, 148 Pac. 131, the court says:

"A contract providing for the recovery of a fixed sum as liquidated damages upon a breach thereof is void to that extent, where the ascertainment of the actual damages incurred because of the breach is neither impracticable nor extremely difficult. Sections 975, 976, Rev. Laws, 1910."

The third proposition is that the demurrer to the evidence should have been sustained, for the reason that the plaintiffs had failed to show substantial performance on their part of the contract. It is stated in the argument that by computation there was something like 5,280 acres under lease instead of 6,000 as provided in the contract, and that it has not been shown that the titles to this block of leases were such perfect and acceptable titles as is contemplated by the agreement between the parties; that there was at least two of these tracts that the title was not good, and counsel insists that if it is to be held that the whole 6,000 acres were to be tendered to the American National Oil Company, then it must follow that if any acreage is not salable, a substantial compliance has not been shown. It is insisted that some of the land was encumbered and had prior liens on it, which could if foreclosed wipe out the interest of a lessee completely.

Having thus got the three propositions insisted on for a reversal by plaintiff in error before the court in concrete form, we will now take them up and discuss them separately. We are of the opinion that the first proposition is well taken. This defendant entered into a bond to indemnify the Great Southwestern Petroleum Company against damages for a failure on the part of the American National Oil Company to comply with its contract in regard to drilling on the premises described in the lease. The Great Southwestern Petroleum Company and the American National Oil Company entered into a contract with 30 odd individuals who are named as defendants in error, whereby they assign and transfer, or attempt to do so. a one-half interest in the bond of this plaintiff in error. The case of Mandeville v. Welch, supra, lays down the rule so clearly that there can be no doubt about the right of parties to split up the contract without the consent or acquiescence of the parties to be affected. The rule laid down in that case has been followed in the German Fire Insurance Co. v. Bullene, supra. This rule seems to be too well established for further discussion, and we will take the next proposition. that is, that the bond sued upon is absolutely void. This raises the question of the clause in the bond that recites as follows:

"It being further understood and agreed that the sum of $2,500 is the amount in damages agreed upon between the parties to said contract which the Great Southwestern Petroleum Company will suffer by reason or failure on the part of the American National Oil Company to commence said operations upon said leases on or before the 2nd day of May, 1918."

That provision is in violation of sections 5068 and 5069, Compiled Laws of 1921, and under the authority, above cited, under this head, and the very recent case from this court of McAlester v. Williams, 77 Okla. 65, 186 Pac. 461, and the latest expression of this court on the subject in the case of Vitagraph— Lubin— Selig— Essanay v. Billings, 87 Okla. 192, 209 Pac. 773. Both of these late cases adhere to the doctrine laid down in the cases heretofore cited. In McAlester v. Williams, supra. Justice Kane discussed the rule of equitable relief under such contract, but equitable relief can only be applied where it is an equitable action and not in a case where it is purely a law question as in the case at bar. This is a suit on a written contract and does not need the interposition of equity to enforce it. The parties have incorporated things in the contract here

involved that the statute says makes it void, and there is no room for equity to interpose its relief to the parties from their unambiguous contract. In the case of Vitagraph—Lubin - Selig - Essanay v. Billings supra, this court distinguishes between cases where the damages are easily ascertainable and where they cannot be ascertained by any fixed rule, but adheres to the rule heretofore laid down, that the provision in the contract fixing a sum as liquidated damages is void unless it is shown that the damages could not be ascertained by any fixed rule. In the case at bar, there was testimony introduced by the defendants in error tending to show what the damages would be in the case of a failure to commence operations on or before the 2nd day of May. James E. Calvin was put on the witness stand and testified in answer to the question:

"I will now ask you Mr. Calvin what the market value of those leases were in 1918 and prior thereto at the time this contract was entered into;". A. "Why I would say about $2.00 an acre."

Mr. Meador was asked the question: "I will ask you whether or not during the years 1917-18 the leases in question described in Exhibit 4 had a commercial or market value in your vicinity? If you know, answer it yes or no." A. "Yes, sir; it had a value. Q. "I will ask you if you know what that value was." A. "It had a value from $1.00 to $2.50 an acre."

The only conceivable damage that we can think of would be the value of the leases that the Great Southwestern Petroleum Company would have lost by reason of the failure of the American National Oil Company to have completed or commenced a well by May 2, 1918. Now it seems to us that the damages could have been very easily ascertained by taking the number of valid leases, and we mean by valid leases, those that were merchantable and not encumbered, and fixing their value. The evidence of these two witnesses runs from $1 an acre to $2.50 an acre so it will be seen, that the value of the amount of damages that the defendants in error could have sustained could be very easily ascertained under the above rule.

The last proposition of plaintiff in error is the failure of the defendants in error to show substantial performance of the contract on their part. In view of our holding on the other two propositions, we deem it unnecessary to go into this objection, as we hold that the assigning of a one-half interest in the bond of plaintiff in error to the 30 odd individual defendants in this case was such a splitting up of plaintiff in

error's contract as is prohibited by law, and on the second proposition that the bond is void for the reason that it attempts to fix an arbitrary amount as liquidated damages in a contract where the actual damages are easily ascertainable, and that that part of the bond is void, and that the only damages the defendants in error are entitled to recover would be the loss of such valid leases as they lost by reason of the American National Oil Company failing to commence drilling within the time provided by the contract, which the record shows is easily ascertainable. We are, therefore, of the opinion that the judgment of the trial court should be reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.

By the Court: It is so ordered.